# Smith, *et al. v.* Smith, *et al.*

*Bill to Declare a Deed Absolute on its Face, a Mortgage, and For Redemption.*

(Decided Dec. 19, 1907. 45 So. Rep. 168.)

1. *Mortgage; Equitable Mortgage; Deed Absolute on its Face.*—A deed absolute on its face may be shown to be a mortgage in equity.

2. *Same; Deed as Security for Debt.*—In order to characterize a deed absolute on its face as a mortgage the relation of debtor and

[Smith, et al. v. Smith, et al.]

creditor must exist between the parties and the instrument given as security for the debt.

3. *Same; Pleading.*—The averment that before the execution of a deed, absolute on its face, the grantee stated that he would procure and advance to the grantor the money necessary to enable him to pay his secured debts and to make a proposed composition of his unsecured debts, and that the money so procured could be paid out of the grantor's assets, but which alleges no certain agreement of the amount to be advanced, the time for the advancement and the time of repayment, is not tantamount to an averment that at the time of the execution of the deed there was any debt due or to become due from the grantor to the grantee, so as to create the relation of debtor and creditor essential to make the deed a mortgage.

4. *Deeds; Construction; Construing Instruments Together.*—Where a written instrument referred to the deed and the deed and instrument were executed at the same time they should be construed together. ·

5. *Mortgages; Deed Absolute as Mortgage; Security for Debt.*— Where the wording and substance of a deed and written agreement contemporaneously exectued plainly exclude the theory that a debt existed or that a mortgage was intended, such deed cannot operate as a mortgage unless there is proof of a debt to be secured by it.·

6. *Same; Influence.*—It is indispensable that it should have been the intention of both parties to the deed at the time of its execution that it was to operate as a mortgage before a deed absolute on its face can be declared a mortgage.

7. *Same; Pleading.*—Under the rule that pleading must be construed most strongly against the pleader an averment cannot be construed to aver that it was the intention of the grantee that the deed and agreement should operate merely as a mortgage, which declares that when approved by an attorney the deed and written agreement was intended merely as security for money to be procured and advanced by the grantee to the grantor.

8. *Same.*—The fact that grantee stated that when he got out of the real estate conveyed to him the money he had advanced to the grantor he would deed the remainder back to the grantor will not impress on a deed absolute on its face the characteristics of an equiable mortgage.

9. *Trusts; Parol Trusts; Frauds.*—Unless the execution of the conveyance is procured by fraud a parol trust cannot be ingrafted on the legal title which under the instrument of conveyance is absolute on its face.

10. *Same; Establishment of Trust.*—Fraud must be averred with precision and proven by clear and convincing competent evidence to create a trust ex maleficio.

11. *Same; Fraud.*—The grantee is trustee of the legal title ex maleficio where the grantor executed the deed on condition that it should not go into effect or be filed for recodr until approved by his attorneys, and should be destroyed if not so approved, and the grantee agreed, fraudulently intending at the time not to comply with the agreement, but to file the deed for record and mortgage the property, and did not comply with his agreement but with his fraudulent intent; and

such deed does not operate according to its tenor, notwithstanding a deed may not be delivered as an escrow to the grantee.

12. *Equity; Pleading; Multifariousness.*—To render a bill multifarious as to subject matters there must be different grounds of relief alleged and each ground must be sufficient to sustain a bill. Hence, a bill to declare a deed a mortgage and to have the deed cancelled for fraud in its execution, the averments of which render it without equity as a bill to declare a deed a mortgage, is not multifarious. Although the prayer may be looked to in testing the character of the bill, the prayer alone, unsupported by averments giving the bill equity in every aspect, though it be for alternative or different or inconsistent relief, does not make the bill multifariousness.

14. *Appeal; Affirmance; Decision on Wrong Theory.*—The decree on motion and demurrer will be affirmed where the bill can be upheld on another theory, although such motion and demurrers were overruled by the lower court on the wrong theory.

APPEAL from Talladega City Court.

Heard before Hon. G. K. MILLER.

Bill by M. L. Smith, et al. v. E. J. Smith, et al., to have a deed absolute on its face declared a mortgage and to be let in to redeem. From a decree overruling demurrers and motion to dismiss the bill, E. J. Smith, et al., appeal. Affirmed.

WHITSON & DRYER, and KNOX, DIXON & BURR, for appellant. Where no debts exist a mortgage is impossible. —*Martin v. Martin*, 123 Ala. 191; *Peeples v. Strolla,* 57 Ala. 53; *West v. Hendricks*, 28 Ala. 226. It is not enough that the party intended the conveyance to be a mortgage and considered it a mortgage; nor is inadequacy of price or consideration of itself sufficient to convert a deed into a mortgage.—Authorities supra; *Reeves v. Abercrombie,* 108 Ala. 535. It is not pretended or intimated that E. J. Smith ever intended the instrument to operate as a mortgage and the facts alleged would not create an equitable mortgage.—*Pearson v. Dancer*, 144 Ala. 427. There is nothing in the allegation of the bill on which to base the theory of fraud in the procurement.—*Campbell v. Larmore*, 84 Ala. 499; *Goetter v. Pickett*, 61 Ala. 387. It is not competent to prove that an instrument

of conveyance was delivered to the grantee as an escrow. —*Garner v. Fite,* 93 Ala. 405; *Hargrove v. Melbourne,* 86 Ala. 270; *Strickland v. Griswold,* 43 South. 105. There is nothing in the allegations of the bill to raise a trust, either constructive or resulting.—*Patton v. Beecher,* 62 Ala. 579; *Pearson v. Dancer, supra; Brock v. Brock,* 90 Ala. 86.

CECIL BROWN, and CABANISS & BOWIE, for appellee. The bill can be sustained on the ground that the deed was intended to be a mortgage and operate as such.— *Shreve v. McGowan,* 143 Ala. 665; *Hieronymous Bros. v. Glass,* 120 Ala. 46; *Cramer v. Brown,* 114 Ala. 612; *Williams v. Ragan,* 111 Ala. 621; *Gidden v. Powell,* 108 Ala. 621; *Elston v. Comer,* 108 Ala. 76. While it may be significant that no evidence of indebtedness was taken, it is not necessary to do so in order to raise up the relation of debtor and creditor.—*Gerson v. Davis,* 143 Ala. 381; *Richter v. Mull,* 128 Ala. 198; *T. C. I. & R. R. Co. v. Wheeler,* 125 Ala. 538; *Reeves v. Abercrombie,* 108 Ala. 535; *Henderson v. Horton,* 133 Ala. 669. The respondent became a trustee ex male ficio or ex delicto on the allegations of the bill.—*Manning v. Pippin,* 95 Ala. 543; 2 Pom. Eq. Jur. Sec. 1055; 15 A. & E. Ency. of Law, p. 1184; *Deegle v. Wentz,* 93 Am. Dec. 763; *Cannon v. Gilmer,* 135 Ala. 302; *Waller v. Jones,* 107 Ala. 331; *Kyle v. Perdue,* 95 Ala. 579; *Spies v. Price,* 97 Ala. 168. Under the allegations of the bill confidential relations existed of trust and confidence.—Authorities next above; *Adams v. Sayre,* 70 Ala. 318; *S. U. & N. I. Co. v. Dangaix,* 103 Ala. 388; *Walling v. Thomas,* 133 Ala. 426. The bill was not multifarious.—119 Ala. 175; 114 Ala. 601; 132 Ala. 107. Nor was it barred by the statute of limitations or laches.—*Waller v. Jones, su-*

*pra; Richter v. Nall, supra; Walling v. Thomas, supra; Mullen v. Walton,* 142 Ala. 166; *Gerson v. Davis, supra.*

DENSON, J.—This appeal is prosecuted from a decree of the city court of Talladega overruling a motion to dismiss a bill for want of equity and overruling a demurrer to the bill. The bill has been carefully read and considered, and without stating its contents in detail we will proceed to a discussion of the theories upon which the complainants (appellees) seek to support it.

One purpose of the bill is to have a conveyance absolute on its face declared a mortgage and that the complainants be let in to redeem from the mortgage. In respect to this theory of the bill, the conveyance (Exhibit A) is one of lands, executed by the complainant M. L. Smith, and his wife, to E. J. Smith. It is absolute on its face, with nothing in its terms to indicate that a mortgage was intended, or that it should be taken otherwise than as an absolute conveyance. Nevertheless such an instrument may, in equity, by means of extrinsic and parol evidence, be shown to be in reality a mortgage. "The principle which underlies this doctrine * * * is that it would be a virtual fraud for the grantee to insist upon the deed as an absolute conveyance of the title, which had been intentionally given to him and which he had knowingly accepted merely as a security, and therefore in reality as a mortgage."—3 Pom. Eq. Jur. § 1196. The essential fact to characterize such conveyance as a mortgage, and which must be distinctly averred in the bill, is that the conveyance was given as security for a debt—that the relation of debtor and creditor existed between the parties. "If there is no indebtedness, the conveyance cannot be a mortgage."—*Harling v. Charleston,* 51 Ala. 166; *Martin v. Martin,* 123 Ala. 191, 26

South. 525; *West v. Hendrix*, 28 Ala. 226; *Peeples v. Stolla*, 57 Ala. 53.

It is not averred in, nor can it be fairly inferred from, the allegations of the bill, that E. J. Smith was to look to the complainants, or to either of them, for the payment of any money, or that E. J. Smith held any debt against the complainants or either of them. M. L. Smith, the complainant with whom all the transactions which led up to the execution of the conveyance were had, was thought to be insolvent, and it was agreed that he should go (and he did go) into bankruptcy, and a composition of his unsecured indebtedness was accomplished at 40 cents on the dollar. This of itself is incompatible with the idea that his prior contractual obligations should continue, against his voluntary consent, after his discharge. While the bill avers that prior to the filing of the petition in bankruptcy by M. L. Smith there was a statement made by E. J. Smith to M. L. Smith that he would procure and advance to him the money necessary to enable him to pay off secured debts, and the amount necessary to pay the proposed composition of his unsecured debts, yet it was stated in the same connection, as shown by the bill, "that the money so advanced could be paid out of M. L. Smith's assets." Furthermore, it plainly appears that up to that time there was not any agreement sufficiently certain to make a binding legal contract between them. E. J. Smith had agreed to nothing definite. It is manifest that he had merely held out the hope that something might be done whereby M. L. Smith might escape with something from his insolvent condition. This is made clear, and it may be said to be admitted, by the complainants in the last sentence of the sixth section of the bill, wherein, referring to the time after M. L. Smith was adjudged a bankrupt, it is averred: "At this time nothing had been said

as to how the money was to be raised for the said M. L. Smith, except that E. J. Smith was to assist him in making some arrangement therefor." So the matter was left without any of the elements of certainty as to the amount, the time for the advance to be made, and the time for repayment; and it may be said that the bill on its face concedes as much. Therefore, from the averments, it cannot be said that up to the time the conveyance was executed there was any debt due or to become due from M. L. Smith to E. J. Smith.

It is obvious that from the contents of the conveyance of the lands and the written agreement executed contemporaneously with it nothing is to be gathered which in the remotest degree tends to show that the relation of debtor and creditor existed between the grantors and grantee, that M. L. Smith owed E. J. Smith anything, or that there was any contingent liability from M. L. Smith to E. J. Smith. On the contrary, the wording and the substance of the conveyance of the lands and of the written agreement plainly exclude the theory that a debt existed or that a mortgage was intended. The two papers, having been executed at one and the same time, and the written agreement referring to the conveyance of the land, will be construed together. The agreement (Exhibit B) sets out in detail the existing conditions, explains the transaction and its meaning, and leaves nothing to be inferred or implied. After reciting that the consideration paid is the full value of the property, it recites, further, that the conveyance of the lands (Exhibit A) and the property embraced in the transaction is, without any reservation, to be held in fee simple to E. J. Smith, forever, absolutely as his own, and states that the grantors "will make, execute, and deliver to the said E. J. Smith any and all further or additional conveyances, transfers, and assignments of any or all of

said property hereinbefore described, transferred, and conveyed (except the homestead), as he may request. So far, then, as the writings are concerned, there is an express stipulation that the conveyance shall not operate as a mortgage. Whether so or not, and whether such a stipulation may be overridden by parol evidence that the conveyance should be opertaive as a mortgage, it is clear, and the fact remains, that it could not so operate in the absence of any proof of a debt to be secured by it. —*Swift v. Swift*, 36 Ala. 137; *Worley v. Dryden*, 57 Mo. 226-231. As was said in *Peeples v. Stolla, supra*: "The effect of a mortgage * * * is to leave on the mortgagor a personal liability for the residuum of the debt, if, on foreclosure, the property mortgaged fails to yield a sum sufficient to pay it in full." In other words, the instrument must be capable of enforcement by either of the parties as a mortgage. In the bill it cannot be found that a debt is averred in such sort that E. J. Smith might foreclose the conveyance as a mortgage to collect the debt.

Furthermore, to show that a conveyance should operate as a mortgage, it is indispensable that the bill should aver the concurring intention of both parties, at the time of the execution of the instrument, that it should so operate.—*Douglass v. Moody*, 80 Ala. 61; *Mitchell v. Wellman*, 80 Ala. 17; *Martin v. Martin*, 123 Ala. 191, 26 South. 525; *Reeves v. Abercrombie*, 108 Ala. 535, 19 South. 41. In the fifteenth paragraph of the bill it is averred "that the making and signing of said two conveyances, Exhibits A and B, was merely intended, should they be approved by Brown & McElderry, as security for said moneys so to be procured and advanced by the said E. J. Smith to and for the said M. L. Smith as aforesaid." According to the well-established rule that pleadings must be construed most strongly against

the pleader, this cannot be held to allege intention on the part of E. J. Smith that the conveyances should operate merely as mortgages. Indeed, considering the bill as a whole, it seems that the pleader intended to negative, and does negative, the idea that E. J. Smith intended that the conveyances should operate as mortgages. There is in the bill, it is true, the averment that E. J. Smith stated that when he got back out of the property the money he had advanced he would deed the remainder back to M. L. Smith, but this statement or allegation, if proved, would not impress on the conveyances the characteristics of equitable mortgages.—*Pearson v. Dancer*, 144 Ala. 427, 39 South. 474. And the bill, in connection with this averment and referring to it, avers that at the time E. J. Smith did not intend to do so, and that he obtained the conveyances for the purpose of acquiring the property, and to accomplish his purpose "did in reality fraudulently conspire, plot, intend, and seek to get control of the affairs and assets of M. L. Smith for the purpose of getting rid of the competition of his business with that of Smith Bros. and E. J. Smith, and in carrying out such design the said E. J. Smith did cause the said conveyance (Exhibit A and B) to be prepared and drawn, without mentioning the same to M. L. Smith until they were presented by E. J. Smith to M. L. Smith for his signature on the 16th day of December, 1904, only three days before the day set for the creditors' meeting for the consideration of an offer of composition," and that, "when the said M. L. Smith did agree to sign said conveyances upon condition that they should not go into effect or be filed for record until approved by Brown & McElderry, and should be destroyed in the event they were not so approved, the said E. J. Smith assented and so agreed to do, fraudulently intending not to comply with his said agreement, but to imme-

[Smith, et al. v. Smith, et al.]

diately file said conveyances for record, and mortgage the said property." It is apparent from these allegations that M. L. Smith himself did not consider the conveyances equitable mortgages. The most that can be said of the allegations is that they simply show that M. L. Smith signed the papers, trusting to the alleged promise of E. J. Smith to submit them to Brown & McElderry, and not to have them recorded unless approved by that firm of lawyers; and it may be that he trusted, too, to the alleged parol promise of E. J. Smith to convey back.

Appellees, in their brief upon this point or theory, have cited several Alabama cases to support their argument that a mortgage was intended. We have examined all the authorities cited, and in every case in which the bill was held good against demurrer, or in which relief was granted on final hearing, it plainly appeared by the averments of the bill and the proof that the relation of debtor and creditor existed between the grantor and grantee. Especially is this true of the case of *Shreve v. McGowin*, 143 Ala. 665, 42 South. 94, the opinion in which case is set out fully in the brief of two of appellees' counsel.

In conclusion on this point, it is clear to our minds that the allegations of the bill are not sufficient in respect to the mortgage theory—that they do not show that the conveyances were intended to operate as equitable mortgages; and in this respect the bill is without equity.

We come next to consider whether the bill contains equity as one to declare a trust, on the theory that the grantee is a trustee of the legal title ex maleficio. In his incomparable work on Equity Jurisprudence, Mr. Pomeroy, after a discussion of trusts ex maleficio, clas-

33 R

sifies them and says (volume 3, § 1055): "A second, well-settled, and even common form of trusts ex maleficio occurs whenever a person acquires the legal title to land or property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified purpose, as, for example, a promise to reconvey it to the grantor, and the like, and, having thus fraudulently obtained the title, he retains, uses, and claims the property as absolutely his own, so that the whole transaction by means of which ownership is obtained is in fact a scheme of actual deceit. Equity regards such a person as holding the property charged with a constructive trust, and will compel him to fulfill the trust by conveying according to his engagement." In the succeeding section (1056) he says: "The foregoing cases should be carefully distinguished from those in which there is a mere verbal promise to purchase and convey land. In order that the doctrine of trusts ex maleficio with respect to land may be enforced under any circumstances, there must be something more than a mere verbal promise, however unequivocal; otherwise, the statute of frauds would be virtually abrogated. There must be an element of actual fraud accompanying the promise, and by means of which the acquisition of the legal title is wrongfully consummated. Equity does not attempt to enforce verbal promises in the face of the statute. It endeavors to prevent and punish fraud, by taking from the wrongdoer the fruits of his deceit, and it accomplishes this object by its beneficial and far reaching doctrine of constructive trusts." And in another section he says: "The only ground upon which such a trust can be rested, and is rested by the overwhelming weight of authority, is actual fraud."—3 Pom. Eq. Jur. § 1054.

Our leading case, that of *Patton v. Beecher et al.*, 62 Ala. 579, recognizes and accentuates this principle. In that case the court, speaking through Brickell, C. J., said: "The plain meaning of the statute is that a trust in lands, not arising by implication or construction of law, cannot be created by parol; that a writing signed by the party creating or declaring the trust, is indispensable to its existence. Fraud, imposition, mistake, in the original transaction, may constitute the purchaser or donee a trustee ex maleficio. It is fraud, then, and not subsequent fraud, if any exists, which justifies a court of equity in intervening for the relief of the party injured by it." This case has been reviewed, cited, and reaffirmed many times by this court, notably in the case of *Brock v. Brock*, 90 Ala. 86, 8 South. 11, 9 L. R. A. 287. *Brock v. Brock* was a case in which a bill was filed to establish a trust in lands which had been conveyed absolutely, on the ground that the grantee practiced fraud on the grantor in procuring the execution of the instrument, and of such sort as constituted her a trustees ex maleficio. The deed, as the original bill alleged, was executed on the verbal condition or promise that if the grantor, who proposed going abroad, returned home a sober man, free from his habits of dissipation, his said wife (the grantee) would return to him and live with him as his wife, and the deed in such event was to become null and void and of no effect. The court held that this averment failed to impart equity to the bill, and it was amended by charging that "the promises made by the grantee, which led to the execution and delivery of the deed, were false and fraudulent at the time they were made, and were made by her with the intention of never complying with them at the time they were made." This amendment, it seems, imparted equity to

the bill; but the complainant, on final hearing, failed in his proof.

The rule, then, established by the authorities, and the one by which the case in judgment must be worked out, is that "a trust will never be raised by the breach of a mere verbal promise to purchase lands and convey them on request; or, as stated by the learned author: 'The fraud which suffices to lay a foundation for such a trust is not simply that fraud which is involved in every deliberate breach of contract.   *   *   *   There must have been an original misrepresentation, by means of which the legal title was obtained, and an original intention to circumvent, and get a better bargain, by the confidence reposed.'   *   *   *   But in no case will the grantee be deemed a trustee, if he used no fraud or deceit in getting his title, although he verbally promised to hold the land for the grantor."—*Brock v. Brock, supra; Manning v. Pippen,* 95 Ala. 537, 11 South. 56; Id., 86 Ala. 357, 5 South. 572, 11 Am. St. Rep. 46. In the case cited from 86 Ala., 5 South. ,11 Am. St. Rep., the principle declared in *Patton v. Beecher* was applied to the case of a grantee in a deed who procured his title by a fraudulent promise to execute a will. It was there said: "If there was a fraudulent intent in obtaining the deed without the intention to make the will, and pursuant to it the will was not made, the question of the statute of frauds becomes immaterial." In such a case the court would hold the grantee to be a trustee ex maleficio.

On the foregoing considerations and authorities it is made clear that no parol trust can be ingrafted on the legal title, which the instrument of conveyance makes absolute on its face, unless its execution is procured by fraud. Fraud necessary to create the trust must be averred with precision and proved by clear and convincing proof. In other words, where a right depends upon

establishing fraud, it is essential that the facts and circumstances which constitute it should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called upon to answer. "The reason of this rule is that fraud is a conclusion of law from the facts stated, and it is a well-established rule of pleading that facts, and not legal conclusions, are to be pleaded. Mere general averments of fraud, or the fraudulent conduct of a party, without the facts, do not constitute a statement upon which the court can pronounce judgment. However, a general statement of the facts, from which, unexplained, the conclusion of law arises, is sufficient."—9 Ency. Pl. & Pr. 684, 686, 688, and cases cited in note 1 to the text on page 687; 22 Ency. Pl. & Pr. 128 (1) ; Bigelow on Fraud, 450; *Long v. King,* 117 Ala. 423, 23 South. 534; *Danforth v. Herbert,* 33 Ala. 497; *Martin's Heirs v. Tenison,* 26 Ala. 738; *Buford v. Steele,* 80 Ala. 147; *Pickett v. Pipkin,* 64 Ala. 520.

In this respect the appellees contend that the bill shows that confidential relations existed between the grantor and the grantee in the conveyances. If this be conceded, yet the bill also shows that, at the time the conveyances were presented to the grantor by the grantee for signature, the grantor does not claim to have been ignorant of the contents of them, nor that the grantee made any false statement as to their contents. On the contrary, the inference to be drawn from the bill is that the grantor knew their contents, and the bill specifically avers that the deeds were signed on the condition that they should be submitted by the grantee to the attorneys of the grantor, and that, if they did not approve them, they were to be of no effect, and were not to be placed on record, but destroyed. Thus it appears that the grantor, if deceived, was not deceived by any state-

ment, or concealment, of the contents of the deeds; and, as to the propriety of the execution of them, the bill shows that he referred that question, through the grantee, to his own attorneys. So it is manifest the only averment in the bill, according to the rule above enunciated, upon which the complainants can depend and must depend for the equity of the bill in respect to the trust, is found in the thirteenth paragraph, in the following language: "And when the said M. L. Smith did agree to sign the said conveyances upon condition that they should not go into effect or be filed for record until approved by Brown & McElderry, and should be destroyed in the event they were not so approved, the said E. J. Smith assented, and so agreed to do, fraudulently intending not to comply with his said agreement, but to immediately file the said conveyances for record and mortgage said property. The said E. J. Smith failed to show said conveyances or to mention them to Brown & McElderry, or either of them, and neither they nor either of them saw or heard of said conveyances, except as hereafter stated, until long after the same were placed on record, and the mortgage to said bank was placed on record." This allegation shows a parol promise on the part of the grantee, and, while a mere failure to carry out the promise is not sufficient to raise a trust ex maleficio, yet it sufficiently appears from the bill that the promise made induced the execution of the conveyances, and it is specifically averred that the grantee made the promise fraudulently intending not to comply with it, and that he did not comply with it. Here we think it sufficiently appears that an act of bad faith, so far as pleading goes, is shown by the bill in the procurement of the execution of the conveyances; the allegations being to the effect that the grantee practiced a fraud in getting the grantor to sign them. Whether or not the

averments are true, it is not a quesion for our considera-
tion at this time.

But the appellants insist that this cannot avail the
complainants anything, because the grantors were not
ignorant of the contents of the conveyances and there
was no misrepresentation as to their contents.   We rec-
ognize the principle which underlies this contention,
that where a party signs an instrument in writing with-
out reading it, or without any knowledge of its contents,
.he is bound by the signature, unless his failure to read
it or his lack of knowledge of its contents was the result
of fraud practiced upon him by the party procuring the
signature.   But, as has been elsewhere stated, the com-
plainants make no claim of right because of a lack of
knowledge of the contents of the conveyances.   Their
case rests upon actual fraud on the part of the grantee
in procuring the signtures to the conveyances.

It is also insisted that, as a deed may not be delivered
as an escrow to the grantee, the conveyances must be
operative according to their tenor.   It is obvious that
this contention is without merit if the execution of the
conveyances was procured through fraud. We are of the
opinion that the averments of the condition upon which
the conveyances were signed, coupled with the averment
that at the time the grantee fraudulently intended not
to comply with the condition, and his failure to comply,
and the offer to do equity, impart equity to the bill, and
for this reason the motion to dismiss the bill for want
of equity was properly overruled.

In respect to the demurrer to the bill, while many
grounds of demurrer are assigned, only one ground
(that of multifariousness) is insisted upon in the argu-
ment of appellants' counsel.   This ground of demurrer

[Smith, et al. v. Smith, et al.]

proceeds upon the theory that the bill is filed in a double aspect and that the rights sought to be enforced are repugnant to each other; in other words, that the bill seeks, first, to declare a conveyance absolute on its face a mortgage, and, secondly, to have the conveyances canceled for fraud practiced by the grantee in procuring its execution. To make a bill multifarious as to subject-matters, there must be different grounds of suit alleged, and each ground must be sufficient to sustain a bill; and, while the prayer must also be looked to, ·in testing the character of the bill, the prayer alone, not supported by averments, though it be ·for alternative, or different, or inconsistent kinds of relief, does not make the bill multifarious.—*Boutwell v. Vandiver*, 123 Ala. 634, 26 South. 222, 82 Am. St. Rep. 149, and authorities there cited. Having held that the bill is without equity as one to declare the conveyance a mortgage, it follows from the principle above enunciated that the demurrer is untenable.—16 Cyc. 241 (b), and note 63; 14 Ency. Pl. & Pr. 197.

While the chancellor's opinion found in the record shows that he overruled the motion to dismiss the bill for want of equity on the wrong theory, nevertheless the decree on the motion and the demurrer will be affirmed. The respondents will be allowed 30 days in which to answer the bill, to be extended at the discretion of the chancellor for good cause shown.

Affirmed.

TYSON, C. J., and SIMPSON and ANDERSON, JJ., concur.