(90 South. 307)

ROBINSON v. J. BICE & SONS.

(5 Div. 597.)

(Supreme Court of Alabama.   Oct. 27, 1921.)

1. Trusts ⚖═95—Acquisition of title on promise to convey, and to convert timber into lumber held to create constructive trust.

A device by which defendant acquired title to land in controversy, consisting not merely on a promise to convey to complainants, but in the procurement of their signatures binding them to the performance of a contract for the conversion of timber on the land into lumber, thus imposing the burden of considerable engagements on them, and presumably conferring benefits of consequence on defendant, held to create a constructive trust.

2. Equity ⚖═148(3), 149—Bill asking alternative relief held not multifarious; bill not multifarious because contract purported to be for one complainant only.

A bill for specific performance of a contract to convey lands, and for an accounting under a contract for the conversion of timber on the land into lumber, held not multifarious because, in the alternative, it prayed that the amount due on the lumber contract, if decreed to be of force and effect, be ascertained and decreed to be paid to complainants, and because the lumber contract in its original memorandum form purported to stipulate for the advantage of one of the complainants only, the undertakings therein set forth being averred to have been for the benefit of the complainants, under Code 1907, § 3095.

3. Equity ⚖═148(3)—Not multifarious because containing no equity in one alternative.

A bill is not rendered multifarious by the fact that one of its alternative aspects contains no equity.

Appeal from Circuit Court, Chilton County; B. K. McMorris, Judge.

Bill by J. Bice & Son against W. C. Robinson, for the specific performance of a contract to convey lands, and for an accounting, wherein defendant filed an answer and cross-bill.   From a decree overruling demurrers to the original bill as amended, and sustaining

demurrers to the cross-bill, defendant appeals. Affirmed.

From the bill it appears:

That certain lands were sold for division, and that the sale was set aside at the instance of Bice and Robinson for inadequacy of price, Bice procuring from Robinson the loan of $500, which was deposited as a guaranty that a better bid would be made, and Bice arranged with Robinson for a loan of a larger sum of money to make the purchase of the land, with the averment that Robinson purchased the land with this money while acting as the agent of Bice, and had the title made to him (Robinson). That thereafter Bice tendered to Robinson a deed to be executed by Robinson to Bice, conveying this land, and also tendered to Robinson a mortgage and notes properly executed from the firm to Robinson to secure the purchase money, all of which Robinson refused. Later, Bice and Robinson entered into a contract whereby it was agreed between Robinson and Bice that Bice should move his sawmill upon the land immediately, and begin to cut the timber, and begin to manufacture the same into lumber, and was to manufacture for Robinson 150,000 feet of certain dimensions, at $50 per 1,000, f. o. b. cars, and to have all the lumber at the price agreed, and, where there was no agreement as to price, Robinson was to have 10 per cent. less 2 per cent. of the amount received for the lumber, and when the full is made the contract is to specify the terms of conveying the land to Bice. After many efforts this contract was entered into, and is as follows:

This contract or agreement made and entered into this, the 15th day of July, 1920, between J. Bice & Sons, a partnership composed of J. Bice, C. E. Bice and G. A. Bice, as party of the first part, witnesseth that, whereas W. C. Robinson owns the following described lands in Chilton county, Alabama, to wit, S. E. ¼ and S. ½ of N. E. ¼, Sec. 3, Tp. 23, R. 12, and the S. ½ of the N. W. ¼ of Sec. 2, and the N. E. ¼ of the S. W. ¼ of Sec. 3, all in Tp. 23, R. 12; and, whereas said Bice & Sons, desire to cut the timber on said lands for said W. C. Robinson: Now, therefore, the said Bice & Sons agree to cut all timber on said lands into lumber for said Robinson, and to cut, manufacture, load and ship same according to the orders furnished the said Bice & Sons by the said Robinson, and at prices agreed on by the said Bice & Sons and the said Robinson, and where no price is agreed on between the said Bice & Sons and the said Robinson the said lumber shall be delivered to the said Robinson, and he shall be allowed 10 per cent. commission on the amount he receives for said lumber for selling same—2 per cent. is to be deducted from all prices if paid in 10 days from receipt of invoice and bill of lading, but if not paid in 60 days from receipt of invoice and bill of lading of shipment, the net amount of price stated on the order shall be paid.

Said Bice & Sons agreed to cut, load and ship said lumber according to orders furnished by the said Robinson, the amount of 80,000 feet per month board measure each month, beginning July 1, 1920, and continuing successively each month until all timber on said lands has been cut and shipped.

Said Bice & Sons also agree that said Robinson may deduct $10 per 1,000 feet for all lumber shipped or disposed of otherwise as a stumpage price until the said Robinson shall have received the sum of $4,735 and all taxes paid or assessed against said lands, and all other expenses paid or pledged on account of said lands, together with the interest on said amounts from the date of the purchase of said lands by the said Robinson.

This contract shall not be so construed as to permit said Bice & Sons to cut, sell or otherwise dispose of any of the timber on said lands except to the said Robinson, as hereinbefore stated.

It is further understood and agreed that all of the timber on the above-described lands shall be cut and shipped on or before October 1, 1921.

If the said Bice & Sons shall cut and ship all of the timber on the above-described lands for the said Robinson according to this contract and according to orders furnished by said W. C. Robinson on or before October 1, 1921, by cutting 80,000 feet per month as contracted, and if the $10 per 1,000 feet deducted as stumpage price amounts to $4,735, and all taxes paid or assessed and other expenses on account of said lands, together with interest from date said W. C. Robinson purchased said lands, and if said Bice & Sons shall pay on or before October 1, 1921, or on date same falls due if before that date any and all amounts they or either of them may owe said Robinson and discharge all other obligations to the said Robinson, the said Robinson hereby agrees to convey his interest in said lands to said Bice & Sons. But if the said Bice & Sons fail to carry out their contract or any part thereof with the said W. C. Robinson, on or before October 1, 1921, or fail to cut and ship all the timber on said lands on or before October 1, 1921, or fail to pay Robinson all indebtedness the said Bice & Sons, or either of them, may owe the said Robinson by or before October 1, 1921, according to date same falls due, the said Robinson is not obligated to convey his interest in said lands to said Bice & Sons, as above set forth, and the said Bice & Sons thereby forfeit their rights to profit or claim any privileges under this contract on date they fail to comply with any part thereof, and the said Bice & Sons shall pay the said Robinson $10 per 1,000 feet for all lumber cut from the timber on said lands as a stumpage price.

In the event said Bice & Sons shall fulfill their contract and discharge any and all obligations to the said Robinson on or before October 1, 1921, and there still remains timber on said lands suitable for lumber, the terms of this contract shall be extended one month for each 80,000 feet of timber which is uncut on said lands, provided said Bice & Sons continue to cut and ship said timber for said Robinson at the rate of 80,000 feet per month board measure; in no event shall this contract be extended beyond December 31, 1921.

This contract shall not be construed to be a sale of lands or timber above described to the said Bice & Sons, but, in consideration of the completion of this contract of cutting and ship-

ping the timber from said lands according to contract, and the paying of any and all obligations to the said Robinson by the said Bice & Sons, on or before October 1, 1921, according to date same falls due, the said Robinson agrees to convey his interest in said lands to the said Bice & Sons, provided that $10 per 1,000 feet deducted by the said Robinson amounts to the sum of $4,735, and all taxes, liens and other charges, together with interest as above set forth."

That when this contract was presented for signature it was explicitly stated by Bice and his associates that neither would execute the contract without an express understanding that the necessary advances for the purpose of defraying the weekly expenses of the operation of the sawmill were stipulated and provided for, and that they were assured by the representatives of Robinson that this would be amply cared for, upon which two of the Bices executed the contract, but the other declined to execute it until he had a conversation with the said Robinson, and that later he had said conversation, and it was agreed that the parties were to meet at Clanton, and Robinson would make the necessary banking arrangements, by which on each Saturday the Bices would be enabled to procure enough money to meet the necessary weekly expenses, all of which Robinson failed to do, having in mind the covinous desire to hamper the operation of the mill and prevent the carrying out of the contract, which he continued to do, although complainants were ready, willing, and able to comply with their contract had Robinson complied with his.

And other matters not necessary to be here alleged.

The demurrers were, in effect, that there was no equity in the bill, that the facts constituting the fraud were not sufficiently pleaded, that the averments of the bill were too vague and indefinite on which to base a decree of specific performance, and that the bill was multifarious.

Reynolds & Reynolds and Lawrence F. Gerald, all of Clanton, for appellant.

An express trust is not shown. Section 3412, Code 1907; 147 Ala. 254, 40 South. 291. The fraud relied on to avoid the contract is not sufficient for that purpose. 100 Ala. 296, 14 South. 573; 114 Ala. 630, 21 South. 534; 162 Ala. 424, 50 South. 368. The bill is multifarious. 123 Ala. 634, 26 South. 222, 82 Am. St. Rep. 149.

W. M. Adams and J. B. Atkinson, both of Clanton, for appellee.

The bill is a good bill for establishing a constructive parol trust. 39 South. 664; 128

Ala. 600, 30 South. 543; 100 Ala. 612, 13 South. 679; 107 Ala. 331, 18 South. 277. The bill is not multifarious. 173 Ala. 142, 55 South. 781; 195 Ala. 501, 70 South. 143; 189 Ala. 13, 66 South. 720. The court properly dismissed the cross-bill. 178 Ala. 181, 59 South. 661; 7 May. Dig. 291.

SAYRE, J. [1] The device, according to the averments of the bill, by which defendant (appellant) acquired title to the land in controversy, consisted not merely in a promise to convey to complainants, but in the procurement of their signatures binding them to the performance of a contract for the conversion of the timber on the land into lumber, thus imposing the burden of considerable engagements on them, and, we may assume, conferring benefits of consequences on defendant. These facts, sufficiently well pleaded, sufficed to create a constructive trust. Smith v. Smith, 153 Ala. 504, 45 South. 168; 3 Pom. Eq. Jur. (4th Ed.) § 1055. Complainants afterwards entered into a contract with defendant in which they seem to confirm defendant's title to the land; but the averment is that the defendant procured the execution of this contract by fraud, the facts being sufficiently pleaded, so that it should not be allowed to stand as an obstacle between complainants and the relief sought in the way of a conveyance of the land.

[2, 3] It is urged that complainants' bill is multifarious, because, in the alternative, it prays that the amount due on the lumber contract, if decreed to be of force and effect, be ascertained and decreed to be paid to complainants, and because the lumber contract, in its original memorandum form, purported to stipulate for the advantage of one of the complainants only. But the undertakings therein set forth are averred to have been for the benefit of all the complainants, so that neither that feature of the case alleged (McFadden v. Henderson, 128 Ala. 231, 29 South. 640) nor the prayer for alternative relief will now suffice to render the bill multifarious (Code, § 3095), nor would the bill be rendered multifarious by the fact—conceding it to be a fact, as demurrant alleges—that one of its alternative aspects contains no equity (Morris v. Morris, 58 Ala. 443).

We see no necessity for defendant's cross-bill, and hence no error in so much of the decree as sustained complainants' demurrer thereto. 7 Mayf. Dig. p. 291.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.