**TAYLOR et al. v. HANCOCK et al.**

**1 Div. 770.**

Supreme Court of Alabama.

Dec. 21, 1933.

Lyons, Chamberlain & Courtney and Gordon, Edington & Leigh, all of Mobile, for appellees.

Outlaw & Seale, of Mobile, for appellants.

646

BROWN, Justice.

This action is by appellants to recover the value of a quantity of fossil oyster shells used by the defendants in grading a highway on "Cedar Point" under a contract with Mobile county.

The complaint consists of three counts, the first trespass quare clausum fregit de bonis asportatis, the second trespass de bonis asportatis, and the third trover for the conversion of the shells. The plea was the general issue.

Some of the evidence offered by the plaintiffs was, on objection of the defendants, rejected, and at the conclusion of the plaintiffs' evidence, the court, on defendants' motion and request in writing, gave the affirmative charge for the defendants.

The evidence is without dispute that the shells in question were furnished by Mobile county under its contract with the defendants for the construction of a highway on Cedar Point; that the shells were taken from the surface of Cedar Point along the line of the highway, mostly "from the eastern part of the road all except a very small fraction," and all points of the highway are less than thirteen hundred and twenty feet from the eastern shore of Cedar Point. The evidence is without dispute as to the quantity of shells taken and their reasonable market value.

There is no evidence showing, or tending to show, that the shells taken and used by the defendants, or the lands from which they were taken, were even in the actual possession of the plaintiffs; but they contend that they acquired the legal title to the oyster shells through a deed executed by the Mobile & Ohio Railroad Company to them on the 20th of April, 1905, conveying to them "all the rights, title and claim, in and to the *oyster beds* or *oyster interests* which it may have acquired on said Cedar Point or other property covered by said Deed of September 9th, 1898." (Italics supplied.) The deed referred to as of date of September 9, 1898, was a warranty deed from Frederick Kuppersmith and wife to the railroad company, conveying to it a tract of land described as follows:

"Commencing at a point on the western shore of Mobile Bay (taking the shore line in settled weather) where the south boundary line of fractional section seven (7), in Township eight (8) south, range one (1) west, intersects said shore; running thence westwardly 1320 feet more or less, along the south boundary line of said fractional section seven to a point, thence southwardly, maintaining a distance of 1320 feet from the western shore of Mobile Bay in settled weather, into the navigable waters of Mississippi Sound, a distance of three miles, more or less, including in the boundaries herein specified, Cedar Point; the land herein conveyed being bounded on the north by the south boundary line of said fractional section seven, in township eight (8) south, range one (1) west, on the east by the United States Dredged channel of Mobile Bay, on the west by land and water distant 1320 feet west from the west shore of Mobile Bay in settled weather, and on the south by Mississippi Sound.

" '*Together with all the riparian rights and privileges unto the land herein conveyed appertaining.*' " (Italics supplied.)

The day following the execution of the last-mentioned deed. September 10, 1898, the said Frederick Kuppersmith and wife conveyed to the predecessors in title of plaintiffs, the balance of their interest in the tract of 1,400 acres, more or less, of which the land conveyed to the railroad company was a part, specifically excepting from said last conveyance the lands conveyed the day previous to the railroad company.

The deed of April 20, 1905, referring to both of said deeds (of date September 9, 1898, and September 10, 1898), recites that:

"Whereas, it appears that contrary to the intent and purpose of the parties to said deeds, *certain oyster interests on said Island were embraced in the transfer to said Company.*

"*Now therefore,* in consideration of the premises and of the sum of Five Dollars to the Mobile & Ohio Railroad Company, paid by the grantees herein, and in order to carry out the true intent and purpose of said conveyances, the said Mobile & Ohio Railroad Company hereby grants, bargains, sells and conveys to (said grantees, naming them) *all the rights, title and claim, in and to the oyster beds or oyster interests which it may have acquired on said Cedar Point or other property covered by said Deed of September 9th, 1898.*" (Italics supplied.)

The appellants' contention is that the term "oyster beds" as used in this deed vested in the grantees the legal title to the fossil shell deposits on Cedar Point, and offered evidence, extrinsic of the deed, that the fossil shell deposits were treated by geologists as "oyster beds."

The court on objection of the defendants rejected all such evidence, and also excluded

the deed of April 20, 1905, and these several rulings and the giving of the affirmative charge for defendants are the basis for the several assignments of error.

■ The object in construing a deed, and as for that matter any written contract, is to ascertain the intention of the parties, and in case of a deed, especially the intention of the grantor. Primarily the intent must be gathered from a fair consideration of the entire instrument, in the light of facts of which the court takes judicial notice. Alabama Corn Mills Co. v. Mobile Docks Co., 200 Ala. 126, 75 So. 574; Hamner, Adm'r v. Smith, 22 Ala. 433; Chambers v. Ringstaff, 69 Ala. 140. And related instruments between the same parties in respect to the same subject-matter may be looked to by the court in ascertaining the true intent of the parties. Smith et al. v. Smith et al., 153 Ala. 504, 45 So. 168; 18 C. J. page 268, § 229.

■ It is only where the instrument, when thus construed, is doubtful of meaning, that the rules of "practical construction"—that is, aided by proof of the attendant facts— may be applied. Hall v. Long, 199 Ala. 97, 74 So. 56; Dunn & Wife et al. v. Bank of Mobile et al., 2 Ala. 152; 18 C. J. p. 262, § 218.

At the time of the execution of the deeds by Kuppersmith and wife to the predecessors in title of plaintiffs, and the Mobile & Ohio Railroad Company, and the execution of the deed of April 20, 1905, by the railroad company to plaintiffs, the statute, section 3155, Code 1896, conferred on the owner of the lands attingent upon the waters of Mobile Bay, and other navigable oyster-bearing waters, certain riparian rights, subject to lease or bargain and sale. Cleveland & Wife v. Alba, 155 Ala. 468, 46 So. 757.

The deed of September 9, 1898, by Kuppersmith and wife to the railroad company, along with the strip of land embracing Cedar Point, vested in the railroad company a fee-simple title to the land, "together with all the riparian rights and privileges unto the land herein conveyed appertaining"; and the deed of September 10, 1898, by Kuppersmith and wife to the predecessors in title of plaintiffs, conveyed the balance of the 1,400-acre tract to them.

■ Construing the deed of April 20, 1905, in the light of these facts, and its recitals, according to its verbiage the primary meaning, it is too clear to permit of controversy, that its purpose was to vest in the grantees therein named the statutory riparian rights covered by the deed of September 9, 1898. The term "oyster beds or oyster interests" can mean nothing more.

"Oyster bed," as defined by Webster's New International Dictionary, is "a place where oysters grow or are cultivated"; and when the term "oyster beds," as used in the deed, is considered along with the alternative description "or oyster interests," it is clear that the parties were speaking in the deed, not in the terminology of scientists or geologists, but as practical business men familiar with the legal right to take oysters from Mobile Bay, a right incident to the ownership of the lands.

The several rulings of the circuit court are in accord with these views, and the record appears to be free from reversible error.

The judgment is therefore due to be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.