Gaston, Judge
 

 The error assigned upon this appeal, is to be found in an exception to the charge of the judge. The instruction complained of lays it down for law, that if the owner of a tract of land, has, by the erection of a mill-dam, ponded the land of another, under a parol license from him, those who succeed to the estate in the land, thus ponded, cannot, because of a continuance of the nuisance, recover against the alienee of him who erected the dam, unless the dam has been raised to a greater height than was originally permitted.
 
 We
 
 suppose that this instruction is founded upon a principle, recognised, or thought to be recognised in several adjudications, that a verbal autho
 
 *493
 
 rity is not only an excuse for what has been done under it, but cannot be countermanded if once acted upon, without, at least, putting the person licensed in the same condition wherein he was, before acting on the license. The occasion does not call upon us to examine the correctness of this principle, or to define its extent, should the correctness be admitted — and on questions of acknowledged difficulty, where we have not the benefit of a discussion, (and in this case there has been no counsel,) we feel ourselves bound to exercise caution, in forbearing to decide any unnecessary point. The cases that bear upon this doctrine, so far as we know of them, and they are accessible to us, have been carefully examined, and the result is, a conviction that they do not warrant the instruction given; or, if they do, that the instruction, notwithstanding these decisions, is, nevertheless, erroneous. One of the latest of these decisions is
 
 Liggins
 
 v.
 
 Inge,
 
 reported 7 Bing. 682. It is not amiss to remark the extreme caution with which that case is spoken of by Chief Justice Denman, in delivering his very able opinion, and the judgment of the court on the case of
 
 Mason
 
 v.
 
 Hill,
 
 reported 5 Barn.
 
 &
 
 Ald. l. Supposing it, however, to have been properly decided, (of which we say nothing,) it seems to us to have been determined on grounds not applicable to the subject now under consideration. In that case, the plaintiff’s father, by parol license, had permitted the defendants to lower the banks of a
 
 river,
 
 and make a weir above the plaintiff’s mill, whereby less water flowed to it than
 
 before;
 
 and it was held that the plaintiff, could not sue the defendants, for refusing to raise the bank to its former height, and to remove the weir, and thus continuing the
 
 diminished
 
 flow of water to the plaintiff’s mill. The determination is distinctly placed upon these positions, that the water in the river is public property, open to the use of all; that the party who first appropriates to his own use any portion of it, flowing through his own land, has the right to the use of what is thus appropriated, against all others; and that the water, after such appropriation, may be given back to the public, and then appropriated by other individuals to their use. The parol license was regarded, not as transferring to the defendants any right
 
 *494
 
 or interest in the water accustomed to flow to the plaintiff’s mill, but as giving back and yielding up to
 
 the public,
 
 —ft*1' the use of whoever might afterwards appropriate it
 
 —that quantity
 
 of the water which found its way over the weir and the lowered banks. In the present case, the defendants claim the privilege to throw the water of their mill-pond
 
 upon the land of the plaintiff.
 
 They certainly have it not of common right. They claim it as having belonged to their vendor, because of a license from the former proprietor of the plaintiff’s land, and as having been transmitted to them, along with his sale of the land, which they hold as an appurtenance to the thing thereby conveyed.
 

 The case of
 
 Taylor
 
 v.
 
 Waters,
 
 reported 2 Mars. 551, and 7 Taunt. 374, though connected with this subject, decides nothing upon this question. It decides that a license of free admission for the term of twenty-one years to a theatre, on nights of public exhibition, granted for a valuable consideration, is valid. It also decides, that such a license may be granted by parol, notwithstanding the statute of frauds. Of the first position, we see no cause to doubt. A license for a valuable consideration for a specified time, is in law a grant of the thing, or the use thereof for that time, and by the foree of the executed contract as a lease, or a grant, passes an irrevocable right during the time, to the privilege thereby granted. Popham, 151. Vin. Abr. tit. License, E. Vaughan, 351.
 

 ^ The correctness of the second position has been ques-Ytioned, (see
 
 \
 
 Chitty’s Prac. 339, and Sugden on Vendors, 57,) and is opposed by a strength of reasoning not easily answered. But we have no concern with it. Our Statute of Frauds certainly does not embrace such a license, whatever interest it may pass, for that statute applies not to
 
 ,,executed
 
 contracts. The case of
 
 Winter
 
 v.
 
 Brockwell,
 
 8 East, 309, comes from a high authority. The plaintiff brought an action on the case for a nuisance in erecting a sky-light over an open area, by means whereof the light .and air were kept from his windows, and noisome smells arising from the adjoining house, were forced into them. On the general issue the defendant gave in evidence that
 
 *495
 
 the erection complained of was made with the plaintiff’s express approbation, but that after it was finished the plaintiff became dissatisfied, and required it to be put down. Lord Ellenborough admitted the point to be new to him, but he thought it
 
 unreasonable,
 
 that after a party had been led to incur expense in consequence of having a license from another to do an act, and that license had been acted upon, the other should be permitted to recal his license, and treat the first as a trespasser, for having done the act. At the trial he instructed the jury, that the plaintiff could not recal his license without offering to pay all the expenses incurred. When a motion was made by one of the counsel for a new trial, Lord Ellen-borough: remarked that he found himself justified in the opinion he had given the jury by the case of
 
 Webb
 
 v.
 
 Paternoster,
 
 and thereupon the counsel waived the motion. It is impossible, I think, not to feel with Lord Ellenbo-rough, that the plaintiff’s conduct was unreasonable, and that he ought not to be permitted to insist on the erection being destroyed without some compensation to the defendant for the expense incurred. The
 
 quantum
 
 of compensation could not be ascertained in that action, and the question would seem to be, whether compensation must be made before the license can be revoked
 
 at law,
 
 or whether a
 
 legal
 
 revocation could not be made, and then the execution of the judgment enjoined until compensation made. The case of
 
 Webb
 
 v.
 
 Paternoster
 
 (said to be best reported in Palmer, 71,) was determined upon the point, not that the license was not countermandable, but that it was a license for a convenient time only, and that such time had expired before the act done, whereof the plaintiff complained. Two of the judges Montague and Haugh-ton, expressed an opinion that the license, which was a permission from the owner of the land to put a cock of hay thereon for a reasonable time, passed an interest, which charged the land in the hands of the lessee, notwithstanding a countermand. Doddridge doubted thereof, but remarked, among other things, that every license which is
 
 in its nature a license,
 
 is countermandable; and Haughton then said, that there was a distinction between licenses
 
 *496
 
 executed and licenses executory — that the former were not countermandable, but the latter were. It is not improbable, that he regarded the former as irrevocable, because they passed an interest. As the case occurred in the reign of James the 1st, long before the Statute of Frauds, it was argued and decided on common law principles. The case of
 
 Wood
 
 v.
 
 Lake,
 
 in Sayer, 3, does not apply. There, according to the reporter, it was held that an agreement for one to stack coals on another’s land for seven years, may be granted by parol, because it is not an interest. The reporter is confessedly an inaccurate one — the decision, if made, is clearly wrong; (see Sugden on Ven. ut supra;
 
 Phillips
 
 v.
 
 Thompson,
 
 1 John. Ch. Rep.
 
 131;)
 
 but if the decision were right, it bears not upon the present point.
 

 A license is a power or authority given to a man to do a lawful act. Unquestionably, no countermand can make the act done under it illegal. Here it was not a license to erect a dam, for no license was needed for any such purpose. It was a license, by means of a dam on his own land, to pond water on the land of him who gave the license. It is often difficult to distinguish between a license or a mere authority, and an interest or a license coupled with an interest. It necessarily follows, that what is done under either, while in force, is binding upon him who has granted it. Until the license was revoked, the keeping of the water upon the land was lawful. It is a general principle, that! a mere license may be countermanded; and it is equally a! general principle, that an interest once passed cannot be recalled. The extent of the grant, whether it be of an authority or an interest, depends not on any technical words, but upon the intention of the parties. Whether a license to do an act which in its consequences permanently affects the property of him who gives it, when so acted on, that what is done cannot conveniently be undone, may be regarded as the grant of an interest to the extent of the consequences thereby authorised, and therefore not revocable; or whether such a license does not necessarily imply a permission for the thing done to remain, notwithstanding the continuing consequences; and therefore the licenser,
 
 *497
 
 on a principle of good faith, may be forbidden to withdraw it, without indemnifying him who trusted thereto:— whether these or either of these principles can or cannot be extracted from the adjudications, we are of opinion, that they do not uphold the instructions complained of. The right to pond water on another’s land, is an incorporeal hereditament, aright not indeed to the land itself, to a privilege on and upon the land, impairing to that extent the dominion of the proprietor therein. Set up as a permanent interest granted to the vendor of the plaintiff, transferable by him, passing with the land to the defendants, it is inoperative, because it is a freehold interest, and cannot pass but by deed. Regarded as a mere license, however irrevocable, between the parties, (if, indeed, there can be such without an interest,) it is difficult to see how it can be binding between the plaintiff and the defendants. The ancestor of the plaintiff granted
 
 a license,
 
 and the plaintiff has succeeded to all his
 
 estate.
 
 Now if the effect of the license be not to pass any interest out of, or impose any charge upon the land, the plaintiff has succeeded to an unlimited and unshaekled -fee simple therein. A mere authority necessarily ceases with the life of the grantor. The plaintiff’s ancestor granted a license to the
 
 vendor of the defendants;
 
 but regarded as a
 
 license,
 
 how does it enure to the benefit of the defendants ? If it passed as an
 
 appurtenance
 
 to the land, it partook of its nature; it was more than an authority — it was an hereditament. To hold that a permission thus given shall operate forever for the benefit of the grantee and his assigns, against the grantor and his heirs, would be, in effect, to permit a fee simple estate to pass under the name of an irrevocable license. Purchasers would never know what incumbrances were upon their lands, and instead of the solemn and deliberate instruments which the law requires as the indispensable means of transferring freeholds, valuable landed interests would be made to depend wholly on the integrity, capacity, or recollection of witnesses.
 

 The judgment is reversed, with directions to the Court below to award a new trial.
 

 Per Curiam. Judgment reversed.