277 So.2d 95

**Edwin F. CAMP and Margaret R. Camp**

v.

**Jay E. MILAM et al.**

**SC 60.**

Supreme Court of Alabama.

Jan. 25, 1973.

Rehearing Denied May 10, 1973.

George S. Brown, Birmingham, for appellants.

Robert E. Parsons, Birmingham, for appellees.

JONES, Justice.

This is an appeal from the Circuit Court of Jefferson County, In Equity, brought by the Complainants and Cross-Respondents (Camps) from an adverse decree wherein the Respondents and Cross-Complainants (Milams) were awarded certain water rights by way of an easement running with the land in an artificial lake located solely on the property of the Camps.

A summary of the facts, as revealed by the record, is as follows:

In 1957 the Camps purchased a tract of land in Jefferson County, Alabama, for $9,000.00. Later the Camps wished to have an artificial lake constructed on the property. Mr. Camp discussed the plan to build a lake with Milam, who was an engineer and in the construction business. Milam offered to construct the dam for the Camps in return for part of the land and the right to use the lake. On October 26, 1959, Camp and Milam signed a written agreement which provided that Milam would construct an earthen dam on the Camp's property in exchange for 40 acres of the land, the description of which to be mutually agreed upon at a later date. The said agreement also contained the provision that "free access to the entire lake will be available to both parties, herein".

The dam was completed sometime in 1960 or 1961, and the Milams began to use the lake from time to time for recreational purposes. In 1965 the Milams decided to build a home at the lake and asked the Camps to convey the land as provided in the written agreement of October 26, 1959. The Camps did convey, at the Milams' request, a tract of about 25 acres in June, 1965, to A. C. Barrett & Associates, Inc. (Associates), a corporation owned and controlled by the Milam family. The deed executed by the Camps stated therein that the conveyance was subject to the restrictions and limitations contained in a certain written agreement between the Camps and "Associates" dated June 15, 1965. This agreement provided, inter alia, that the Camps would convey the described realty; that the Camps could at any time raise the level of the lake from 871.00 to 881.00; that there would be no construction on the property lying between the lake and the "Associates'" property (the Camps had retained a 10-foot strip of land all around the lake for use as a walkway or roadway); mutual easements would be granted to insure free access to their respective property.

The Milams completed their home on the 25-acre tract in July, 1965, and on August 1, 1965, that property was conveyed to the Milams by "Associates". Since 1965, the Milams have constructed a boathouse and stable on land owned by the Camps with their knowledge and consent. The lake has been used by the Milams for recreational purposes continually from the time of its completion until 1970, when the Camps sent the sheriff in to remove the Milams from "their" lake.

The bill of complaint in this case was originally filed by the Camps against the Milams and subsequently amended to add "Associates" as a party respondent. The bill charged that the Milams had been making use of a lake lying wholly on property owned by the Camps in such a manner as to interfere with the use and enjoyment of the lake by the Camps; specifically, by constructing a boathouse on the shore of the lake on property which was in exclusive possession of the Camps, and operating a motor boat in such a manner as to deprive the Camps of free use of the lake, and in building a stable on the Camps' property.

The prayer of the bill asked the court to declare that the Camps had sole and exclusive rights to the use of the lake and that the respondents had no interest therein. The bill also prayed that the court issue a permanent injunction barring the respondents from the use of the lake and ordering them to remove the stable and boathouse constructed upon the Camps' property.

The Milams filed an answer and cross-bill in which they asserted that the Camps, on October 26, 1959, had agreed that the Milams, their heirs and assigns, would have free access to the lake and full water rights in the lake appurtenant to the ownership and title to certain real property described in a warranty deed dated June 15, 1965, executed by the Camps to "Associates". The cross-bill further averred that in reliance upon said agreement of October 26, 1959, the Milams constructed a

dam to make the lake and that from the date of the completion of the dam until the present the Milams and "Associates" had exercised full possessory rights in and to all water rights of the lake including, but not limited to, fishing and swimming therein and operating power motor boats and skiing thereon.

The cross-bill further averred that in reliance on the agreement of October 26, 1959, the Milams constructed for themselves and for the benefit of "Associates" a brick home at a cost of approximately $55,000.00 and a basement at a cost of approximately $4,000.00. The cross-bill further alleged that the water rights in the lake were necessary and incident to the real property conveyed in said deed from the Camps to "Associates" as to greatly and materially enhance the value of the property and that the water rights were necessary and incident to the reasonable and convenient use and enjoyment of the real property so conveyed. The cross-bill also averred that the water rights constituted an easement and covenant running with the land.

The prayer of the cross-bill asked the court to decree that "Associates", its successors and assigns (Milams), own and have complete and full water rights in the lake and that the said water rights were an easement appurtenant to and running with the land conveyed in said deed.

"Associates' " answer and cross-bill set forth substantially the same facts as the cross-bill of the Milams, and contained substantially the same prayer.

The trial court rendered its final decree in which the relief sought by the Camps was denied in its entirety. The court further decreed that "Associates", its successors and assigns (Milams), own and have title to all water rights in and to the lake and that such water rights are an easement appurtenant to and running with the real property conveyed by warranty deed dated June 15, 1965, from the Camps to "Associates". The decree also states that the Camps own and have title to all water rights in the lake, such water rights also being an easement appurtenant to and running with the real property owned by the Camps. The Camps' application for rehearing having been denied, they bring this appeal.

The Camps claim error and contend that they have exclusive ownership of the entire property on which the lake in question is situated and that no easement or other interest in and to said lake has been granted to the Milams, nor have the Milams otherwise acquired such interest. The Camps further contend that the use made of said lake by the Milams was at best a mere license revocable at the pleasure of the Camps.

The Milams, on the other hand, assert that they own full and complete water rights common with that of the Camps, and that the chancellor correctly construed the deed of June 15, 1965, giving effect to the intent of the parties as set forth in the final decree.

The court is of the opinion that the facts of this case, in keeping with the law applicable thereto, do not support the contentions of either party, we find no basis in the law for the legal conclusion of the court below that the Camps conveyed, or attempted or intended to convey, an easement to the water rights of said lake to "Associates" or its assigns (Milams).

■ The rules of construction of a written contract, including a deed, are well established by our cases. Where a court of equity is called upon to construe a deed (or other written contract), in ascertaining the intention of the parties, the plain and clear meaning of its terms must be given effect to, and the parties must be legally presumed to have intended what is plainly and clearly set out.

■ In the absence of fraud or mistake, it is only where the instrument is doubtful of meaning, or its language ambiguous,

that the court may look beyond the "four corners" of the instrument to give clarity and specificity of meaning. Babcock v. Smith, 285 Ala. 557, 234 So.2d 573; Taylor v. Hancock, 227 Ala. 645, 151 So. 596.

■ Our cases consistently hold that an easement can be created in only three ways: by deed; by prescription; or by adverse use for the statutory period. Kirkland v. Kirkland, 281 Ala. 42, 198 So.2d 771; Kratchoville v. Cloverleaf Plaza, Inc., 276 Ala. 562, 165 So.2d 112. Since the latter two do not apply (use by permission in this case is neither adverse nor exclusive), we must look to the deed and referenced agreement made between the parties on June 15, 1965.

■ Our difficulty here lies in the fact that there is nothing unclear or ambiguous in either the deed or the referenced agreement, neither of which contain any language purporting to convey as easement in the lake. The trial court, then, was powerless to declare a new and different contract into which the parties did not enter. Holt v. Long, 234 Ala. 369, 174 So. 759; Hattemer v. State Tax Commission, 235 Ala. 44, 177 So. 156.

Therefore, the trial court's interpretation of the deed, as set forth in its final decree, constitutes a reformation of the contract between the parties which is unauthorized by either the pleadings or the proof. Atlas Assurance Co. Limited, of London, England v. Byrne, 235 Ala. 281, 178 So. 451.

Having thus concluded, however, we are likewise constrained to the further conclusion that the relief sought by the complainants is also unauthorized. We hold that a legal interest did pass from the Camps to the Milams—not the granting of an easement as contended by the Milams and as found by the trial court, and not a revocable license as contended by the Camps—but an irrevocable license for the reasonable use of the lake commensurate with its size

and nature and as originally contemplated and intended by the parties.

Generally speaking, the term "license" has been used in the common law to denote the doing of an act, i.e., the giving of one's consent. The revocability of a license is grounded on this concept. Since the granting of a license is the giving of one's permission to another to do a certain thing (or, in the case of a negative license, the consent for the benefit of another not to do a certain thing), this license is revocable at the will of the licensor, simply by the withdrawing of his permission. Messer v. City of Birmingham, 243 Ala. 520, 10 So.2d 760; Brookside-Pratt Mining Co. v. Booth, 211 Ala. 268, 100 So. 240. At the root of this concept is the familiar and often quoted language from Thomas v. Sorrell, 124 Eng. Rep. 1098, 1109:

"A . . . licence properly passeth no interest, nor alters or transfers property in anything, but only makes an action lawful, which without it had been unlawful. As a licence to go beyond the seas, to hunt in a man's park, to come into his house, are only actions, which without licence, had been unlawful."

To prevent possible injustice the law began to recognize that the giving of one's permission to another for the doing of certain acts with respect to the property of the former did not necessarily carry with it the unlimited right to withdraw the consent. The concept was broadened to look upon the license not merely as the giving of consent, but, in certain instances, the conferring of a legal right—a license coupled with an interest.[1] From this broadened concept of a license came the ingrafting of the recognized exception to the general rule which may be stated thusly:

"A license has been generally defined as a mere personal privilege . . . revocable at the will of the . . . [licensor] unless . . . in the meantime expenditures contemplated by the li-

1. See Clark, Covenants and Interest Running with Land, (1947 ed.), pp. 13–64.

censor when the license was given have been made . . ."[2]

■■ Thus, when expenditures contemplated by the licensor have been made by the licensee, the license, having been acted upon so as to greatly benefit the licensor, is said to have been executed. An executed license, for reasons founded upon the equitable principle of estoppel, becomes irrevocable and confers upon the licensee a substantive equitable right in the property.[3]

This interpretation and rule was adopted by this court in our decision in Rhodes v. Otis, 33 Ala. 578, wherein this court stated that:

"It would be against all conscience to permit the defendant to revoke his license, after the plaintiff had acted upon it so far that great damage must necessarily result from the revocation. Every reason upon which the doctrine of estoppels *in pais* rests, applies. It is a plain case, where one party has, by his conduct, induced another to act in such a manner, that he cannot be allowed to retract without serious injury to that other person. We think a denial of the right of revocation, under such circumstances, is consistent with justice and right, supported by the analogies of the law, and many respectable decisions.—Rerick v. Kern, 14 Serg. & R. 267; Nettleton v. Sikes, 8 Metc. 34; Angell on Water Courses, 5 div. of chap. 8; Hall v. Chaffee, 13 Vt. 150; Bridges v. Purcell, 18 N.C. 492; Sheffield v. Collier, 3 Kelly (Ga.) 82; Le Fevre v. Le Fevre, 4 Serg. & R. 241."

■ Appellants rely on Messer v. City of Birmingham, supra; Hicks v. Swift Creek Mill Company, 133 Ala. 411, 31 So. 947; and similar cases to support their proposition that a license is a mere personal privilege revocable at the will of the grantor. While this is generally a correct statement of the law, both *Messer* and *Hicks* recognize the exception to the general rule established by Rhodes v. Otis, supra. Where a valuable consideration has moved to the licensor from the licensee, and possession and use has been wholly or partly yielded to the licensee, the license becomes irrevocable. Profile Cotton Mills v. Calhoun Water Co., 189 Ala. 181, 66 So. 50.

Applying these legal principles to the facts of this case, we hold that the Milams became licensees and that this license extended to, and included, the reasonable use of the lake for purposes of swimming, fishing, boating, and other such reasonable uses as originally contemplated by the parties consistent with the Camps' right of common use thereof. We further hold that this license, when acted upon by the Milams through their expenditures in building the dam to the benefit of the Camps (constituting a consideration), became irrevocable; but this irrevocable status does not operate to expand or increase the nature and extent of its use.

It is clear from the evidence that so long as the Milams so limited their use of the lake, and so long as both parties enjoyed its common use, the Camps registered no objection and made no attempt to withdraw their permission. It was only when the Milams exceeded the permission granted by monopolizing the use of the lake so as to impede the Camps' right of common use, that the Camps objected and attempted to withdraw all consent for the use of the lake by the Milams.

While it is our holding that the Camps have no legal standing to enjoin the Milams' use of the lake, this holding is not to be construed to mean that the Camps do not have legal authority to restrict the Mil-

---

2. City of Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 64, 33 S.Ct. 988, 990, 57 L.Ed. 1389, 1393.

3. Megarry and Baker, Snell's Principles of Equity, (1966 ed.), pp. 629–633.

ams to its reasonable use as contemplated by the parties.

We further hold that this license of the Milams, although irrevocable, is by its very nature personal; and, being a personal right, it is not an interest which attaches to or runs with the land, nor can it be assigned, conveyed or inherited. Neither can the use of the lake under this license ever ripen into an easement by prescription, however long continued. *Kirkland,* supra.

In view of the above stated conclusions, we find that the trial court was correct in denying the complainants' prayer for the specific relief sought (i.e., to enjoin the Milams from all use of the lake). However, the trial court erred in granting the relief sought by the respondents in their cross-bills.

Consequently, this cause must be reversed and remanded for further proceedings not inconsistent herewith.

Affirmed in part and reversed in part and remanded.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and McCALL, JJ., concur.

## ON PETITION FOR REHEARING.

Rehearing denied May 10, 1973. All the Justices concurring except Coleman, J., dissenting.

COLEMAN, Justice (dissenting):

On further consideration, I am of opinion that the rehearing should be granted and the cause remanded for further proceedings.

I do not agree that the license to use the lake granted to Milam is irrevocable for the life of Milam or for any other period of time. Rhodes v. Otis, 33 Ala. 578, does not hold that a license granted for a consideration paid by the licensee to licensor must be specifically performed, but *Rhodes* does hold that if a licensor has granted a

license for a consideration paid to licensor by licensee by agreement, then the licensee may recover from the licensor, as allowed by law, for damages sustained by licensee as the result of licensor's breach of his agreement.

I have found no case which has the effect of compelling specific performance of an agreement to grant a license. The holding of the majority has the same effect as compelling specific performance. In Hicks Bros. v. Swift Creek Mill Co., 133 Ala. 411, 31 So. 947, this court said:

"The right of a licensor to revoke a license given by him is fully recognized by our court, as will appear from a mere cursory examination of the cases cited above. And, indeed, is fully recognized in the case of Rhodes v. Otis, 33 Ala. 578, upon which the defendant relies to support its contention of estoppel. Suffice it to say, that in that case a consideration was paid for the easement or license and the licensee or transferee put into possession of the land and water way over which the rights to him were agreed to be granted. There was, therefore, no question of the operation of the statute of frauds, and, indeed, could not be. This being true, upon the plainest principles of equity, the licensor or seller should not have been permitted to retain the purchase money paid to him and to destroy the rights which he had sold to the other party. . . ." (133 Ala. at 424, 31 So. at 951)

In *Hicks* this court cited with approval Thoemke v. Fiedler, 91 Wis. 386, 64 N.W. 1030. An excerpt from the opinion of the Wisconsin Court recites:

" . . . An easement is a permanent interest in the lands of another, with a right to enjoy it fully and without obstruction. Such an interest cannot be created by parol. It can be created only by a deed in writing, or by prescription. But this agreement did have the effect of a parol license. A license creates no

estate in lands. It is a bare authority to do a certain act or series of acts upon the lands of another. It is a personal right, and is not assignable. It is gone if the owner of the land who gives the license transfers his title to another, or if either party die. So long as a parol license remains executory it may be revoked at pleasure. So an *executed* parol license, under which some estate or interest in the land would pass, is revocable. Otherwise title would pass without a written conveyance, 'in the teeth of the statute of frauds.' Nor is such a license made irrevocable by the fact that a valuable consideration is paid for it, or because expenditures have been made on the faith of it. None of these propositions are doubtful, upon the authorities. Washb. Easem. (4th ed), 28, 431, par. 14; 6 Am. & Eng.Ency. of Law, 141, and cases cited in note 3; Hazelton v. Putnam, 3 Pin. 107; French v. Owen, 2 Wis. 250; Clute v. Carr, 20 Wis. 531; Lockhart v. Geir, 54 Wis. 133, 11 N.W. 245; Johnson v. Skillman, 29 Minn. 95, 12 N.W. 149; Olson v. St. P., M. & M. R. Co., 38 Minn. 479, 38 N.W. 490; Minneapolis Mill Co. v. M. & St. L. R. Co., 51 Minn. 304, 53 N.W. 639; Woodward v. Seely, 11 Ill. 157; Wiseman v. Lucksinger, 84 N.Y. 31; Cronkhite v. Cronkhite, 94 N.Y. 323; Eckerson v. Crippen, 110 N.Y. 585, 18 N.E. 443; White v. Manhattan R. Co., 139 N.Y. 19, 34 N.E. 887." (91 Wis. at'389, 390, 64 N.W. at 1030.)

In the instant case the license was not granted by deed, prescription, or adverse possession. I have found no case in this state which holds that a license not created by deed, prescription, or adverse possession can ripen into an easement for years, or for life by specific performance or by virtue of the doctrine of estoppel or any other theory.

Being of opinion that the holding to the contrary is erroneous I respectfully dissent.