319 So.2d 261

**CONSOLIDATED FOODS CORPORATION, a corp.**

v.

**The WATER WORKS AND SANITARY SEWER BOARD OF the CITY OF MONTGOMERY, a corp.**

**SC 1193.**

Supreme Court of Alabama.

Sept. 25, 1975.

Whitesell, Gordon & Gallion, Montgomery, for appellant.

**520**

Robert B. Stewart, Montgomery, for appellee.

JONES, Justice.

This is an appeal from the Circuit Court of Montgomery County from a ruling denying Consolidated Foods Corporation either injunctive relief or damages for a sewer line built across its property by the Water Works and Sanitary Sewer Board of Montgomery. We affirm.

By the late 1960's, the nationwide crusade to improve the environment and preserve our natural resources had reached Alabama. Federal agencies imposed deadlines against dumping industrial wastes into navigable rivers, and local sewer boards adopted plans to implement waste treatment.

In Montgomery, an area of great concern was the Alabama River. In an effort to divert sewage from the Alabama River to a waste treatment center, the Water Works and Sanitary Sewer Board of Montgomery planned to construct a new thirty-inch sewer main along the industrial shore of the river to collect raw sewage discharged from the industries. Since the proposed sewer main crossed privately owned property, pipeline easements were necessary before the project could begin. The acquisition and interpretation of one of these easements is the subject of this appeal.

On April 12, 1970, Consolidated Foods Corporation granted to the Water Works and Sanitary Sewer Board "an easement for the purpose of installing and maintaining under the ground a sanitary sewer in, upon, along and across" certain described property fronting the Alabama River in Montgomery. The Board paid Consolidated $5 in consideration for this grant, and agreed to connect Consolidated's lateral sewer line with the main line. Prior to this time, Consolidated's plant had been discharging its sewage directly into the Alabama River and evidence indicated that it would have cost $50,000 to build a private waste treatment plant sufficient to comply with federal pollution standards.

The Board constructed the line between November, 1970, and January, 1972. The portion of the line built across the Consolidated easement was set on pilings above the ground rather than "under the ground" as indicated by the grant.

At approximately the same time, the United States government was planning construction for Jones Lock and Dam to raise the water level of the Alabama River.

In January, 1970, three months before its grant to the Board, Consolidated granted a flowage easement to the Corps of Engineers. When the dam was completed and the land was flooded, a slough developed in Consolidated's new shore line. The Board's sewer line lies above the new water level, runs between the slough and the main body of the river, and, as a result, completely cuts off water access to the riparian property of Consolidated.

Consolidated did not object to the elevation of the pipeline throughout the one-year construction period and for a year and one half after completion. It finally did object in June, 1973, at which time it was negotiating with O. G. Pinkston of Montgomery for sale of the property. Pinkston is a real estate appraiser and speculator in Montgomery. He planned to purchase the waterfront property from Consolidated and resell it at a profit. Ultimately, he entered into two contracts of sale with Consolidated. He was fully aware of the sewer line when he negotiated these contracts. The first contract, dated December 8, 1972, was for $100,000. Between that date and the negotiation of the second contract, Consolidated filed an action to declare good title against the Board and for specific performance against Pinkston. This suit was dropped as a result of the renegotiation, and a second contract was entered for $72,000. The latter contract provided that Pinkston had the right to maintain a suit in the name of Consolidated to demand either removal of the above ground sewer main or damages for the reduced value of the waterfront property. The contract further provided that Consolidated would transfer any benefit it obtained from the litigation to Pinkston, but regardless of the outcome of the litigation, Pinkston was required to purchase the property for the full price of $72,000. The law suit before us was initiated by Pinkston, in the name of Consolidated, pursuant to that contract.

Consolidated Foods is a Chicago corporation. It has a division called Hollywood Brands which operates the plant in Montgomery affected by the sewage easement. Prior to Consolidated's approval of the sewage easement, officers of Hollywood Brands met in Montgomery with representatives of the Board and the Board's engineering company. At that meeting, the engineering company displayed plans for a sewer line which clearly indicated that the pipe was to be built above the ground. The agents of Hollywood saw these plans but told the Board that the plans would have to be forwarded to the Chicago office for approval. The drawings which were actually sent to Chicago did not indicate that the line was to be constructed on pilings above the water, but a letter which accompanied the plans and the unexecuted easement stated that the "proposed sanitary sewer main will be at an elevation of 126 feet or at the edge of the water when Jones Lock and Dam is completed." The normal water level is 125 feet.

After the construction was completed and during its negotiations with Pinkston, Consolidated consulted the Board about relocating the sewer line. The Board proposed two alternatives and submittted cost estimates in June, 1973. The first proposal —to relocate the main underground—cost an estimated $450,000. The second proposal—to install an inverted siphon in the slough—cost between $225,000 and $250,000. It was acknowledged that these figures would be substantially higher today. There was also expert testimony that the sewer line reduced the market value of the riparian property from $137,000 to $60,000. The expert based his analysis upon the assumption that the best use for the property is warehousing. Without the sewer line, the property has convenient access to a railroad, an interstate highway, and the river. But with the sewer line between the slough and the main river, water access is completely eliminated.

The trial Judge based his denial of relief on three grounds. First, he found that the granting language, "installing and maintaining under the ground a sanitary sewer

in, upon, along and across" the property, is ambiguous; therefore, he looked to extrinsic evidence such as the accompanying letter and plans and the conduct of the parties to interpret the grant. Second, he found that both laches and estoppel barred Consolidated. Third, he found that the equities were balanced.

■ We disagree with the trial Court's first finding that the grant is ambiguous. The basic rule of construction is premised on the principle that, absent the issue of prescription or adverse possession, an easement can be created only by a deed of conveyance. *Camp v. Milam*, 291 Ala. 12, 277 So.2d 95 (1973).

■ We look, therefore, to the written instrument to determine the scope of the grant. The language "in, upon, along and across" is not inconsistent with "under the ground." The former is only the prepositional litany denoting a right of access. It is general language granting the Board a right of ingress and egress across Consolidated's property. *City of Elizabethtown v. Caswell*, 261 S.W.2d 424 (Ky.App.1953); *Commonwealth v. Warwick*, 185 Pa. 623, 40 A. 93 (1898).

It is not necessary, however, to find an ambiguity in the grant before extrinsic circumstances become material. They are material to the trial Judge's finding of estoppel. We agree that Consolidated is estopped. The problem of when a litigant is estopped to assert his rights can never be answered with precision. The traditional elements of estoppel can only be meaningful in the context of individual fact situations.

The fundamental issue here is when did Consolidated learn that the Board intended to build the sewer line above the ground. In planning meetings at Hollywood's Montgomery office, the Board clearly explained the elevation of the line. Even assuming that this knowledge cannot be imputed to Consolidated, the letter accompanying the unexecuted easement gave the elevation of the sewer line and stated that it would be located at the water's edge when Jones Lock and Dam was completed.

This is not to say that the terms of the letter, or the letter combined with other extrinsic circumstances, effected any change in the scope of the grant clearly expressed in the deed of conveyance. It did operate, however, along with other circumstances, to put Consolidated on notice of the true location of the sewer line.

Consolidated's notice at the time of the grant, its acquiescence through the construction period, and its continued silence for one and one half years after the pipeline's completion strengthened the trial Judge's finding of estoppel. In fact, Consolidated did not object to the elevation of the pipes until Pinkston questioned it during his negotiations to purchase the property. Even in this law suit, Consolidated is not concerned with the pipeline's elevation since it has already contracted away its right to any benefit derived from the litigation.

Consolidated argues that mere silence as to rights of record does not give rise to estoppel. We need not decide whether that principle should be applied to the problem of diverging interpretations of easement language between the grantor and grantee, because this case presents additional elements of estoppel.

The first of these elements is Consolidated's permitting the Board to spend large sums of money to construct the pipeline on pilings above the water. An analogy to railroad easement cases provides the best Alabama authority in this area. Those earlier cases held that a landowner who allowed the railroad to construct tracks across his land under a colorable claim of right was estopped from evicting the railroad or interfering with its easement to operate trains. *Hendrix v. Southern Railroad Company*, 130 Ala. 205, 30 So. 596 (1900); *Cowan v. Southern Railroad Company*, 118 Ala. 554, 23 So. 754 (1897).

The large expenditures plus the public benefit accruing from track construction

motivated this Court to favor the railroads in the face of legally valid claims of land-owners. In the midst of our ecological crisis, a sewage easement in 1975 is as vital to the public welfare as a railroad easement was to the rapidly developing commercial society of the 1890s.

These considerations are indeed pertinent to the difficult judicial exercise of drawing lines within such an amorphous region of our law as equitable estoppel.

In addition to permitting the Board to expend the money, Consolidated accepted benefit from the sewer construction by connecting its own sewer discharge to the line. An owner's acquiescence in his grantee's construction of a contract while accepting benefits under that contract has been recognized as a ground of estoppel in Alabama. *McGowin v. Cobb*, 249 Ala. 561, 32 So.2d 36 (1947).

Thus, the duration of Consolidated's knowledge of the above ground construction, the expense incurred by the Board, and the benefit accepted by Consolidated, while if individually considered may have been unpersuasive, combine in this case to compel the conclusion that Consolidated is estopped from asserting its claim against the Board.

The trial Judge's third finding that the equities are balanced is also correct. This finding is supported by several facts. The sewer main was built in the public interest. A substantial portion of the benefit from it accrued to Consolidated, which would otherwise have been obligated to construct a private waste treatment mechanism. It is apparent from Consolidated's acquiescence that it was not concerned with the elevation of the line. The line did not interfere with its use of the property for a manufacturing plant. Only when the property was transferred to Pinkston, who proposed a different use, did the above ground location create a problem. Pinkston has already received compensation in the form of a reduced purchase price. He now comes to this Court, in the name of Consolidated, to prosecute a claim which Consolidated itself never chose to assert during the three years the pipeline abutted its property. To require the Board to remove the line or further compensate Pinkston for an encroachment he knew of when he bought the property, is against the public interest.

For the reasons stated, we will not disturb the trial Court's holding.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and SHORES, JJ., concur.