LOUISVILLE AND NASHVILLE
RAILROAD CO., a corporation,
Plaintiff-Appellant,

v.

The Tug M/V BAYOU LACOMBE, her engines, boiler, hull, tackle, appurtenances, etc., In Rem, and Oil Transportation Company, Inc., a corporation, et al., Defendants-Appellees.

No. 77–1917.

United States Court of Appeals,
Fifth Circuit.

June 20, 1979.

Patrick W. Richardson, Schuyler H. Richardson, III, Hunstsville, Ala., for plaintiff-appellant.

Charles E. Lugenbuhl, W. J. Larzelere, Jr., New Orleans, La., Gorman R. Jones, Jr., Sheffield, Ala., Thomas W. Thorne, Jr., New Orleans, La., for defendants-appellees.

Before WISDOM, CLARK, and FAY, Circuit Judges.

WISDOM, Circuit Judge:

This appeal raises the question whether a railroad company has a cause of action enforceable in admiralty for damages for the loss of use of a bridge negligently struck by a vessel.

On the morning of March 18, 1975, the tugboat M/V Bayou Lacombe struck a swingspan railroad bridge crossing the Tennessee River at Decatur, Alabama. The Louisville and Nashville Railroad Co., forced to reroute its trains until repairs to the bridge were completed, sued under the Admiralty Extension Act, 46 U.S.C. § 740, to recover damages for the loss of the use of the bridge. The plaintiff appeals from the grant of summary judgment in favor of the tugboat and its owner, Oil Transportation Co.

Louisville & Nashville had a contractual right to use the bridge under a 1907 agreement with its owner, Southern Railway Co. Decisions of the Supreme Court and this

circuit, applying maritime law, constrain us to deny recovery of pecuniary losses to a plaintiff who is deprived of a contractual benefit by the negligent acts of a defendant. We affirm.

## I.

Twenty years ago *the plaintiff sued a different tugboat for damages resulting from the temporary loss of the use of the same bridge. Louisville & Nashville Railroad Co. v. Arrow Transportation Company,* N.D.Ala.1959, 170 F.Supp. 597.[1] The district court dismissed the complaint on the authority of *Robins Dry Dock & Repair Co. v. Flint,* 1927, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290. The plaintiff in *Robins* was a time-charterer of a steamship which had been negligently damaged by a dry dock. The plaintiff sued the owner of the dry dock for damages suffered as a result of the steamship's unavailability on the charter date. In an opinion by Justice Holmes, the Court held that a time-charterer, who is without any property interest in the vessel, cannot recover economic losses sustained as a result of the unintended injury inflicted upon the vessel. "The damage [to the vessel] was material to the [time-charterer] only as it caused the delay in making the repairs, and that delay would be a wrong to no one except for the petitioner's contract with the owners. . . . Their loss arose only through their contract with the owners—and . . . as a general rule, at least, a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong. . . . The law does not extend its protection so far." 275 U.S. at 308–09, 48 S.Ct. at 135.

Scrutinizing the agreement between Louisville & Nashville and Southern Railway, the *Arrow* court held that the plaintiff was in the same position as the time-charterer in *Robins.* The district court relied on the Alabama Supreme Court's construction of the 1889 predecessor agreement to the 1907 agreement between the two railroads in a suit brought by Louisville & Nashville to reduce its rent base after Southern abandoned several tracks. *Southern Railway Co. v. Louisville & Nashville Railroad Co.,* Ala.Sup.Ct.1941, 241 Ala. 691, 4 So.2d 400. In a key paragraph, the Alabama court expressed its view of the agreement:

> The *contract* is sui generis. It conferred on the appellee and its predecessor, the right of joint user with the owner, in consideration of payment of rent, and an agreement to contribute, on a basis of wheelage, to the upkeep and maintenance of the line and its facilities. *While the right it confers may not be, strictly speaking, an easement, it is a right of user in the nature of an easement,* and the agreed rent and the obligation to contribute to upkeep is based on the right of user. (Emphasis added).

4 So.2d at 405–406. A right of joint user in the nature of an easement, the *Arrow* court concluded, is not a possessory interest. Like time charters, trackage agreements conferring a right of joint user to a railroad to operate its trains over the facilities of another railroad had been construed, in other contexts, as creating a personal obligation, not an estate in the property of the owner. *Union Pacific Ry. Co. v. Chicago, Rock Island and Pacific Ry. Co.,* 1895, 163 U.S. 564, 582–583, 16 S.Ct. 1173, 41 L.Ed. 265; *Thompson v. Texas Mexican R. Co.,* 1945, 328 U.S. 134, 140, 66 S.Ct. 937, 90 L.Ed. 1132. Because the plaintiff's loss from the damage to the bridge arose only through its contract with the owner to use the bridge, the *Arrow* court found that the plaintiff was barred from recovering damages under *Robins.*

## II.

The railroad's basic argument is that, in spite of *Robins, Southern,* and *Arrow,*

---

1. On appeal, the defendant Oil Transportation asserted for the first time that the *Arrow* decision is binding on Louisville & Nashville in this suit. Res judicata is an affirmative defense. *See* Fed.Rule Civ.Pro. 8(c). That defense was waived when the defendant failed to raise it below. *See Huffman v. Pursue,* 1975, 420 U.S. 592, 607, n. 19, 95 S.Ct. 1200, 43 L.Ed.2d 482; *Sosna v. Iowa,* 1974, 419 U.S. 393, 396–97, n. 3, 95 S.Ct. 553, 42 L.Ed.2d 532; Wright & Miller, *Federal Practice & Procedure,* Vol. V, § 1278.

Louisville & Nashville can recover its losses because its right to use the bridge is, indeed, a "property" interest. The plaintiff takes the position (a) that the rule of *Robins* is irrelevant in suits brought under the Admiralty Extension Act, 46 U.S.C. § 740, which, according to the plaintiff, permits recovery of damages for all injuries to property; and (b) that the agreement between the two railroads, Louisville & Nashville and Southern, grants the plaintiff either an easement in the bridge or "a right of user in the nature of an easement", an interest sufficient to constitute a property right under Alabama law and, therefore, a basis for recovery under the Admiralty Extension Act.

Neither the Supreme Court's decision in *Robins* nor the Alabama Supreme Court's decision in *Southern* can be brushed off so lightly.

██ The Admiralty Extension Act, the asserted source of the plaintiff's right of recovery, provides in part:

The admiralty and maritime jurisdiction of the United States shall extend to and include *all cases of damage or injury, to person or property,* caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land. (Emphasis added).

46 U.S.C. § 740 (1975). The Act, however, does not create new causes of action; it merely expands the locality rule of admiralty jurisdiction to encompass "ship-to-shore" torts. *See Gebhard v. S.S. Hawaiian Legislator,* 9 Cir. 1970, 425 F.2d 1303; Gilmore & Black, *The Law of Admiralty,* § 7–17 (2d ed. 1975). As a result of the Act, a plaintiff is no longer precluded from suing in admiralty when a vessel collides with a land structure, such as a bridge. The question before us now is not one of jurisdiction but of the plaintiff's right to recover losses for the kind of harm it has sustained.

That question is governed by *Robins.* Whatever the wisdom of the traditional rule of nonliability for negligent acts causing economic loss, *Robins* reflects the state of the law in this circuit.[2] We have denied recovery to a plaintiff whose gas supply was cut off when a barge injured a gas pipeline owned by a third party who had contracted to supply the gas to the plaintiff. *Kaiser Aluminum & Chemical Corp. v. Marshland Dredging Co.,* 5 Cir. 1972, 455 F.2d 957. More recently, we refused to permit a plaintiff to recover pecuniary losses for the damage caused by a vessel to a lock owned by another. *Dick Meyers Towing Service, Inc. v. United States,* 5 Cir. 1978, 577 F.2d 1023. In that case, we explained that "the basis for denial

---

**2.** The nonliability rule of *Robins* has been assailed by both the courts and commentators. *See Petition of Kinsman Transit Co.,* 2 Cir. 1968, 388 F.2d 821. An exhaustive survey of the writing on this subject appears in *Federal Commerce & Navigation Co. v. M/V Marathonian,* S.D.N.Y.1975, 392 F.Supp. 908.

"The explanation usually given by the courts, when one is given at all, is that such harm is too 'remote' for negligence liability, and that the defendant's conduct is not the 'proximate cause.' In most, if not all, of the cases in which recovery has been denied, the defendant has had no knowledge of the contractual or prospective relation, and no reason to foresee any harm to the plaintiff's interests; and the decision sometimes has been justified under the rule as to unforeseeable plaintiffs stated in § 281. It seems more likely, however, that it is the character of the contract or prospective interest itself which has led the courts to refuse to give it protection against negligence. They apparently have

been influenced by the extremely variable nature of such relations, the fear of an undue burden upon the defendant's freedom of action, the probable disproportion between the large damages which might be recovered and the extent of the defendant's fault, and perhaps in some cases the difficulty of determining whether the interference has in fact resulted from the negligent conduct. What the reason may be . . . there is as yet no liability for negligent interference with the performance of a contract, or with a prospective contract relation."

Explanatory Notes to Restatement (Second) of Torts, § 766B, Comment a. *See also* W. Prosser, Law of Torts § 129 at 938–42 (4 ed. 1971); Note, Negligent Interference with Economic Expectancy: The Case for Recovery, 16 Stan.L. Rev. 664 (1964). *But see* 1 Harper & James, The Law of Torts, § 610 at 501–505 (1956); James, Limitations on Liability for Economic Loss Caused by Negligence: A Pragmatic Appraisal, 25 Vand.L.Rev. 43 (1972).

of recovery in the cases following *Robins* [is the law's traditional reluctance] to recognize claims based solely on harm to the interest in contractual relations or business expectancy". 577 F.2d at 1025.

Nevertheless, because the critical factor in applying *Robins* is "the character of the interest harmed", *Dick Meyers, supra,* 577 F.2d at 1025, we must address the plaintiff's contention that the loss of the use of the bridge was a deprivation of tangible property rather than a deprivation of a contract right. The plaintiff insists, first, that Southern gave it an easement in the bridge, pointing out that the agreement contains language of grant and of inheritance and that the agreement technically suffices as a conveyance of an interest in real property.

■ Alabama courts consistently hold that an easement can be created in only three ways: by deed; by prescription; or by adverse use for the statutory period. *Camp v. Milam,* Ala.Sup.Ct.1973, 291 Ala. 12, 277 So.2d 95. We find that the agreement between the two railroads was not a deed. There is no language purporting to convey an interest in real property, the appellant pays a quarterly rental, and the right to use the bridge is terminable, after the expiration of an initial term, at the will of both parties upon notice. The bridge is used jointly and while Alabama courts have ruled that an easement need not be exclusive, a persuasive factor that two parties share an easement is the joint obligation of the easement holders to contribute to its upkeep. *Duke v. Pine Crest Homes, Inc.,* Ala.Sup.Ct.1978, 358 So.2d 148. Under the agreement with Southern, Louisville & Nashville has no obligation to repair the bridge; it merely contributes to the upkeep of the tracks on the bridge computed on the basis of "wheelage", the number of its trains that pass over the tracks.

We are convinced, moreover, that the Alabama Supreme Court's opinion fully disposes of the plaintiff's contention that it has an easement in the bridge. The Alabama Court treated the agreement as a contract and not as a conveyance of real property. The Court specifically noted that the right conferred in the agreement is "not strictly speaking, an easement", although it may have some of the characteristics of an easement. 4 So.2d at 406.

■ Next, the plaintiff contends that even if it does not have an easement, its right in the bridge, described by the Alabama Supreme Court as a "right of user in the nature of an easement", constitutes a form of property interest under Alabama law. The plaintiff has not cited and we have not found Alabama cases elaborating on the elements of a "right of user in the nature of an easement". *Hausman v. Brown,* Ala.Sup.Ct.1918, 201 Ala. 331, 77 So. 993, offers some guidance to the meaning of this term. There, the Alabama court described the interest reserved to the grantor in the stairs, balcony, and hall of a building used to gain access to an adjoining building, alternatively, as a "license in the nature of an easement" or an "irrevocable license". Under Alabama law, an irrevocable license arises from equitable principles of estoppel; it is a personal right created by contract and not an interest which attaches to or runs with the land. *See Camp v. Milam, supra,* 277 So.2d at 98.

■ Even if the Alabama courts would classify the plaintiff's rights in the bridge as a form of property interest created by virtue of its contract with the owner, that interest would form too slender a reed upon which to base a right of recovery despite *Robins.* In *Robins,* Justice Holmes recognized that recovery might be possible if the charterer of the vessel had been a demise-charterer with a property right in the vessel rather than a time-charterer.[3] The property rights of a demise-charterer differ significantly from any property rights that appellant might have in the bridge. The demise-charterer stands in the shoes of the owner of the vessel for the duration of the con-

---

**3.** Professors Gilmore and Black outline the distinctions between the two charters:

*The Time Charter.* In this form . . . the owner's people continue to navigate and

manage the vessel, but her carrying capacity is taken by the charterer for a fixed time for the carriage of goods anywhere in the world (or anywhere within stipulated geographic

tract while the shipowner retains merely a right of reversion. The demise-charterer has full responsibility for managing and maintaining the vessel and if the vessel is damaged, he may be held liable to the owner. *See* Gilmore & Black, *The Law of Admiralty,* § 4–20 (2d ed. 1975).

It is clear that the plaintiff's right to use the bridge has none of the incidents of ownership attributable to the demise-charterer that would justify recovery for damage to physical property.[4] As the Alabama Supreme Court noted in *Southern,* Louisville & Nashville never had possession or control of Southern's property. 4 So.2d at 402. The bridge is maintained entirely by Southern's employees; Louisville & Nashville has no obligation to repair the bridge or contribute to the cost of repairs in the event of damage by a third party. Indeed, we note that Oil Transportation has already paid Southern for the physical damage to the bridge. Thus, whatever label may be attached to the plaintiff's right to use the bridge, at bottom, the damage to the bridge caused Louisville & Nashville to suffer the loss of an economic expectancy and not a

proprietary loss. *Robins* and the cases in this circuit following *Robins* compel us to deny recovery for that loss.

The judgment of the district court is AFFIRMED.

---

limits) on as many voyages as approximately fit into the charter period. She is therefore under the charterer's orders as to ports touched, cargo loaded, and other business matters. The time charter is used where the charterer's affairs make it desirable for him to have tonnage under his control for a period of time, without undertaking the responsibilities of ship navigation and management of the long-term financial commitments of vessel ownership. . . .

.   .   .   .   .

*The Demise or Barboat Charter. In this form, the charterer takes over the ship, lock, stock and barrel, and mans her with his own people. He becomes, in effect, the owner pro hac vice, just as does the lessee of a house and lot, to whom the demise charterer is analogous.* Obviously, such an arrangement is suitable to the needs of anyone who wants, for a time, to be in the position of the owner of a vessel, but who does not want to go to the expense and trouble of buying one or having one built. . . . [W]hether a company in this position wants to take a ship on time or on demise will depend on whether the advantages of the complete control enjoyed by the demise charterer seem, in the actual situation, to outweigh *the rather heavy responsibilities that he assumes, as owner, in effect, for the time being.*

G. Gilmore & C. Black, The Law of Admiralty § 4–1 at 194 (2 ed. 1975) (footnote omitted). (Emphasis added.)

4. The plaintiff cites *Chicago & Western Indiana R. Co. v. Motorship Buko Maru,* 7 Cir. 1974, 505 F.2d 579 and *Boh Bros. Construction Co., Inc. v. M/V Tag-Along,* 5 Cir. 1978, 577 F.2d 303, for the proposition that this Circuit has granted recovery to a plaintiff with substantially the same rights in a bridge as the Louisville & Nashville Railroad possesses. In *Buko Maru,* however, recovery was granted to five railroads who were each 20 percent stock *owners* of the Western Indiana Railroad Company, the owner and operator of the damaged bridge.

*Boh Bros.* offers no assistance to the railroad either. There, a contractor engaged in building a bridge struck by a towboat sued to recover damages. Louisville & Nashville insists that the contractor's possessory interest in the bridge under the construction contract is no greater than that of the railroad under its agreement with Southern. But we have no basis for ascertaining the grounds on which recovery was had in *Boh Bros.* The defendant stipulated to its liability in that case; thus, the sole question before the district court and the court of appeals was one of computation of damages.