RICHARD L. HOLMES, Retired Appellate Judge.
James S. Barron and Jan S. Barron appeal from a summary judgment in favor of Hinton Mallette Walden, Dozier Lumber Manufacturing. Company, Inc. (Dozier Lumber), Lucille Barron (Lucille), and Jimmy Smith (hereinafter collectively referred to as defendants).
This case involves a boundary line dispute between coterminous landowners. Walden and Lucille own properties which share common boundaries with certain property owned by the Barrons. In addition to being a landowner, Walden is the owner and operator of Dozier Lumber. Smith is a logger, employed by Walden.
In December 1993 the Barrons filed a complaint, alleging causes of action for statutory damages, trespass, conversion, and slander of title. The complaint was later amended to include causes of action for negligence, breach of contract, and fraud in the inducement. We would note that Ralph Powell, a land surveyor, was originally named as a party defendant. However, the parties later stipulated that Powell could be dismissed from the action.
The defendants filed an answer, denying the allegations contained in the complaint. Walden and Dozier Lumber also filed a counterclaim, requesting that the trial court quiet title to the disputed lands.
The defendants filed a summary judgment motion, along with affidavits and a brief in support of the motion. The Barrons filed a response to the summary judgment motion, as well a motion for a partial summary judgment. The Barrons also filed affidavits and a brief in support of their position.
After a hearing the trial court issued an order, which stated, in pertinent part, the following:
“A judgment is hereby entered against [the Barrons] and in favor of [Lucille and Walden], establishing the boundary line between their property as the blue paint line, as established by the earlier Powell survey, except for the north border on the lands of [Lucille], being the north line of the 25-acre tract owned by [Lucille] in section 35, Township 6, Range 18, which said boundary lines shall be as established by the Andress survey of May 12, 1989. Judgment is further entered against [the Barrons] and in favor of all defendants on [the Barrons’] claims for damages arising out of the cutting of timber on the disputed property.”
The Barrons appeal. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
Rule 56(c), Ala. R. Civ. P., provides that a summary judgment is appropriate in situations where no genuine issue of any material fact exists and the movant is enti- *359 tied to a judgment as a matter of law. It is well settled that the moving party has the burden of establishing that no genuine issue of a material fact exists and that all reasonable uncertainties regarding the existence of a genuine issue of a material fact must be resolved against the moving party. Porter v. Fisher, 636 So.2d 682 (Ala.Civ.App.1994).
Once the movant makes a prima facie showing that no genuine issue of a material fact exists, then the burden shifts to the nonmoving party to present substantial evidence regarding the existence of a genuine issue of a material fact. Porter, 636 So.2d 682.
We would note that the court must view the evidence in a light most favorable to the non-moving party and that all reasonable doubts must be resolved against the moving party. McClendon v. Mountain Top Indoor Flea Market Inc., 601 So.2d 957 (Ala.1992).
In the present ease the Barrons contend that the trial court improperly entered a summary judgment in favor of the defendants because, they say, the defendants failed to make a prima facie showing that no genuine issue of a material fact existed. The Barrons further contend that they are entitled to a partial summary judgment.
Our review of the record reveals the following pertinent facts: In February 1993 the Barrons purchased a 190-acre tract of property from Hilton A. Williams and his wife, Ildean J. Williams. At the closing the Bar-rons, the Williamses, and Lucille executed a boundary line agreement.
The boundary line agreement described the 190-acre tract owned by the Williamses and the 25-acre, tract owned by Lucille, which were contiguous tracts of land that shared common boundary lines. We would note that the 25-acre tract owned by Lucille shares common boundary lines with the 190-acre tract on three sides.
The boundary line agreement further stated that the parties desired to settle the boundary line dispute and to establish the location of the true and correct boundary lines between the properties. The parties agreed to the following, in pertinent part:
' “1. That the location of the true and correct boundary lines between the respective properties of [the Williamses] and [Lucille] is as set out by map of survey of said property by Daniel R. Andress, Jr., Ala. Registry No. 1844, dated May 12, 1989, a copy of which is attached hereto and marked ‘Exhibit A’.
“2. [Lucille] does hereby release, quitclaim, grant, sell, and convey unto [the Williamses], their heirs and assigns, all right, title, interest, and claim she might have in and to the said 190-aere tract of [the Williamses], as indicated on the attached ‘Exhibit A’.
“3. [The Williamses do] hereby release, quitclaim, grant, sell, and convey unto [Lucille], her heirs [and] assigns, all right, title, interest, and claim they might have in and to the said 25-aere tract of [Lucille], as indicated on the attached ‘Exhibit A’.
“4. [The Williamses] further agree and hereby grant unto [Lucille], her heirs, assigns, or agents, in consideration of the execution of this boundary line agreement, the right to cut and remove all merchantable timber located on the said 25-acre parcel of [Lucille’s], including the right to cut and remove all standing timber located on a strip of land being approximately 78 feet north and south lying across the South side of the 15 acre parcel of land of [the Williamses] located in NW ½ of the NW 1/4, Section 35, Township 6N, Range 18E.
[[Image here]]
“6. [The Williamses] hereby grant unto [Lucille], or her agent, a temporary easement for purposes of ingress and egress to cut and remove said timber....”
Thereafter, Lucille contracted with Walden to remove the timber described in paragraph four of the boundary line agreement. Walden, then, hired Smith to cut and remove timber from the defendants’ properties up to the boundary line between the contiguous properties which, the defendants claim, had been established by a blue paint line.
The Barrons contend that Smith cut and removed timber not only from the property described in paragraph four of the boundary line agreement, but also along the *360 entire western boundary of their 190-acre tract. The defendants contend that the blue paint line lies to the east of what the Barrons claim to be the boundary line between the properties.
As previously noted, the boundary line agreement described Lucille’s 25-acre tract of property, which shared three common boundary lines with the 190-acre tract owned by the Barrons. The parties agreed that the location of the true and correct boundary lines between the respective properties was that as established by the Andress survey of May 1989. Additionally, as part of the agreement, Lucille “release[d], quitclaim[ed], grantfed], [sold], and convey[ed] unto [the Williamses], their heirs and assigns, all right, title, interest, and claim she might have in and to the said 190-aere tract.”
The Barrons argue that when a court is “ascertaining the intention of the parties, the plain and clear meaning of [the] terms [of a written contract] must be given effect to, and the parties must be legally presumed to have intended what is plainly and clearly set out.” Camp v. Milam, 291 Ala. 12, 16, 277 So.2d 95, 98 (1973). Our supreme court also stated the following in Camp, 291 Ala. at 16-17, 277 So.2d at 98:
“In the absence of fraud or mistake, it is only where the instrument is doubtful of meaning, or its language ambiguous, that the court may look beyond the ‘four corners’ of the instrument to give clarity and specificity of meaning.”
The Barrons contend that there is no ambiguity in the boundary line agreement.
The Barrons assert that, in light of the above, the trial court erred in entering a summary judgment in favor of Lucille and in establishing the boundary line between the properties as the “blue paint line, as established by the earlier Powell survey, except for the north border on the lands of [Lucille] ... which said boundary lines shall be as established by the Andress survey of May 12, 1989.”
The defendants argue, in pertinent part, the following:
“The boundary line agreement only addresses the boundary line between [the Barrons’] property and [a 25-acre tract, which is only] a small portion of [Lucille’s] property. The descriptions of the two properties which are the subject of the boundary line agreement are clearly set forth in the first two paragraphs of the agreement_ The clear and unambiguous language of the boundary line agreement demonstrates that [this 25-acre tract] is the only property of any of the defendants to which this boundary line agreement applies.”
(Emphasis in defendants’ brief.)
We would note that Walden submitted several affidavits to the trial court. In his January 27, 1995, affidavit, Walden states that he negotiated the boundary line agreement on behalf Of Lucille, his aunt, and that it was never his intention for the boundary line agreement to have any effect on any boundary line with the exception of the north line of Lucille’s 25-aere tract.
In light of the foregoing, we find that the trial court erred when it entered a summary judgment in favor of Lucille, because there existed a genuine issue of a material fact regarding the effect of the boundary line agreement. We should not be understood as concluding where the true and correct boundary line lies, only that summary judgment was improper.
The Barrons also contend that the trial court committed reversible error when it entered a summary judgment in favor of Walden.
Our review of the record reveals that since June 1, 1989, Walden has owned a six-acre tract, which shares a common boundary line with the 190-acre tract currently owned by the Barrons. The common boundary line is the eastern boundary line of the Walden property and the western boundary line of the Barrons’ property.
Walden submitted the affidavit of J.P. Chandler, his predecessor in title, to the trial court. Chandler’s affidavit stated the following, in pertinent part:
“[A]t the time I sold the property to [Walden] and for a number of years prior to that time, [the said east line of the six-acre tract] was marked by a blue painted line. *361 It was my intention that the east line of the property [that] I was selling to [Walden] would be marked by the blue painted line, which had been in existence for some years, and the property was sold with that understanding.”
Walden submitted his affidavit, dated January 9, 1996, stating that for numerous years he has been familiar with a blue-painted boundary line running between the properties.
The record before this court does not reveal any substantial evidence to counter Chandler’s affidavit.
In light of the foregoing, we find that the trial court properly entered a summary judgment in favor of Walden, establishing the blue painted line as the boundary line between the 6-acre tract owned by Walden and the 190-acre tract owned by the Barrons.
The judgment of the trial court is affirmed in part, reversed in part and remanded.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of Ala.Code 1975, § 12-18-10(e).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.